Filed 8/14/13 (unmodified opn. attached)

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re D.N. et al., Persons Coming Under the Juvenile Court Law. <br><br> _____ <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>      Plaintiff and Respondent, <br><br>      v. <br><br> R.N., <br><br>      Defendant and Appellant. | B245303 <br><br> (Los Angeles County Super. Ct. No. CK13254) <br><br> ORDER MODIFYING OPINION [NO CHANGE IN JUDGMENT] |

THE COURT:*

It is ordered that the opinion filed 8/14/13 be modified as follows:

On the caption page and on page 11, <u>CERTIFIED FOR PUBLICATION</u> should be changed to read <u>CERTIFIED FOR PARTIAL PUBLICATION</u>.

_____

*EPSTEIN, P. J.            WILLHITE, J.            SUZUKAWA, J.

Filed 8/14/13 (unmodified version)

CERTIFIED FOR PUBLICATION[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR


| In re D.N. et al., Persons Coming Under the Juvenile Court Law. | B245303 |
|---|---|
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK13254) |
| Plaintiff and Respondent, | |
| v. | |
| R.N., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of Los Angeles County, D. Zeke Zeidler, Judge. Affirmed.

Kate M. Chandler, under appointment by the Court of Appeal, for Defendant and Appellant Mother, R.N.

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant Father, E.T.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Peter Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

R.N. (mother) and E.T. (father) appeal from the order terminating their parental rights to daughters D.N. and A.T.[1]  The parents argue there is a lack of compliance with the notice requirements of the Indian Child Welfare Act, 25 U.S.C. section 1901 et seq. (ICWA).  We affirm.  Substantial evidence supports the juvenile court's determination that notice was proper and ICWA did not apply to this case.  In the published portion of this opinion, we conclude, among other things, that this court cannot override the Choctaw Nation's determination that the children are not eligible for membership.

## FACTUAL AND PROCEDURAL SUMMARY

In June 2010, the Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300[2] petition on behalf of D.N. (born in 2006) and A.T. (born in 2010).  The petition alleged mother had a long history of substance abuse, and father had failed to provide for A.T.

Mother claimed she had Choctaw Indian ancestry.  The court ordered DCFS to provide ICWA notices to the Choctaw tribes and the Bureau of Indian Affairs (BIA).  In July 2010, DCFS sent notices to the Choctaw Nation of Oklahoma, the Mississippi Band of Choctaw Indians, the Jena Band of Choctaw Indians, as well as the BIA and the United States Department of the Interior.  The notice identified mother's father (Richard N.) and paternal grandmother (Martha H.) as Choctaw.

Father claimed he may have Cherokee ancestry through his paternal great-grandfather, but no living relatives could provide information about it.  The court ordered that notice be sent to the BIA and the Cherokee tribes.  At the adjudication hearing in October 2010, DCFS complained father had not cooperated with its efforts to gather further ICWA-related information.  In father's presence, his attorney stated on the record,

---

[1] In the record, father also is referred to as L.T., mother as R.F., and A.T. as A.N. Father was found to be the girls' presumed father, although he was not D.N.'s biological father.

[2] Unless otherwise indicated, statutory references are to the Welfare and Institutions Code.

"Dad says he's got no ICWA–" The court found ICWA did not apply to father, noting father had retracted his earlier claim of Cherokee ancestry. The court sustained an amended version of the section 300 petition, ordered the children placed with father, and ordered the case transferred to a different department.

In January 2011, DCFS filed a section 387 petition, alleging father could not provide for the children. The court detained the children and granted the parents monitored visitation. The new judicial officer to whose department the case had been transferred could not determine from the record whether the ICWA notice had been deemed complete as to both parents and ordered DCFS to file the Choctaw and Cherokee tribes' responses. DCFS reported that ICWA already had been found not to apply to father, and that the three Choctaw tribes had responded the children were not eligible for membership. The court nevertheless continued the matter for proper ICWA notices, adding in the minute order that the notices were incomplete and father's name was misspelled.

In March 2011, DCFS renoticed the BIA and the Choctaw tribes, and for the first time noticed the Eastern Band of Cherokee Indians, the United Keetowah Band of Cherokee Indians in Oklahoma, and the Cherokee Nation of Oklahoma. In April 2011, the court sustained the section 387 petition, removed the children, and ordered reunification services for the parents. The orders were stayed, awaiting the tribes' responses to the ICWA notices. DCFS re-sent all March notices in June. Between March and June 2011, it received responses from all noticed tribes that the children were not eligible for membership. The Cherokee Nation's response listed the names of additional ancestors on mother's side, including H.P. and L.P. as mother's paternal great-grandparents, as well as several birthdates that did not appear in the ICWA notices. The court found the notices incomplete because they did not include the names of any of father's ancestors, or the birth date of Martha H., mother's paternal grandmother. The court ordered DCFS to prepare new notices using the parents' birth certificates.

In September 2011, DCFS mailed out new ICWA notices that included the children's and parents' birth certificates. On mother's side, the notices added the birth

3

date of mother's father, and alternative last names for her paternal grandmother (Martha H., Martha N., and Martha P.). The notices also included the names of father's parents. In response, the Cherokee Nation requested the date of birth and complete name of father's father, who was included in the notice by his first and last name. Other than arranging for a single visitation with the children in June 2011, father had not been in contact with DCFS since December 2010. The social worker advised the Cherokee Nation she could not provide any additional information. All tribes sent negative responses to the September 2011 ICWA notices.

The court terminated reunification services as to both parents in December 2011, but stayed the orders for resolution of ICWA notice issues since mother and another relative had provided additional documentation about mother's paternal grandmother. The documents pertained to the grandmother's efforts to enroll one of her sons in the Choctaw Nation. They suggested that the grandmother may have been enrolled as Martha or Mattie; that her parents, H. P. and L.P., may have been enrolled as well; and that H.P. was enrolled as a "freedman" rather than as a "citizen." DCFS renoticed the Choctaw and Cherokee tribes, attaching the documents to the notice and listing them in a cover letter. The court acknowledged that DCFS had sent the documents to the tribes. All tribes sent negative responses to the December 2011 notices.

During the January 2012 hearing, mother provided the court with her aunt's enrollment number. DCFS provided this information to the Choctaw Nation by telephone and letter. The Choctaw Nation again responded that the children were not eligible for membership. The response stated: "The Choctaw Nation has exhausted all resources and we have determined ICWA will NOT and DOES NOT apply, the tribe feels that we have done a thorough job and sees no reason to continue any future inquiries." In an e-mail correspondence in March 2012, the contact person at the Choctaw Nation confirmed the tribe "will not spend any more time on this case as it is futile" and reminded DCFS that eligibility for membership is determined by the tribe and is entitled to deference and full faith and credit.

The court found the ICWA notices to the Cherokee tribes complete in February 2012. At the April 2012 hearing, mother submitted evidence that H.P. and other ancestors were listed on the Choctaw Nation Freedmen Roll. The court initially indicated its intent to order that the Choctaw Nation be renoticed with this evidence. DCFS reminded the court that the tribe had made it clear it would not spend any more time on the case, and the court decided not to order a further notification. Over mother's objection, the court found that the ICWA notices to the Choctaw tribes were proper and complete, and that ICWA did not apply to the case.

At subsequent hearings, mother represented that she was attempting to gain enrollment in the Choctaw Nation. At the section 366.26 hearing in October 2012, she requested a continuance to obtain further ICWA-related information. The court denied the request, noting mother had not provided an enrollment card, and the tribe had discouraged further inquiries. It also denied mother's section 388 petition, which alleged mother recently had enrolled in a drug program. Father was not present at the hearing. The court terminated parental rights, freeing the children for adoption by their long-time foster parents.

The parents appealed.

## DISCUSSION

ICWA furthers the federal policy "'" that, where possible, an Indian child should remain in the Indian community . . . ."'" [Citation.]" (*In re W.B.* (2012) 55 Cal.4th 30, 48.) It requires that notice of the dependency proceeding be given to the relevant tribe or tribes whenever "the court knows or has reason to know that an Indian child is involved . . . ." (25 U.S.C. § 1912(a).) The notice must include the names (including maiden, married, and former names), current and former addresses, birthdates, and places of birth and death of the child's parents, grandparents, and great-grandparents, "if known." (25 C.F.R. § 23.11(a), (d); see also § 224.2, subd. (a)(5).) The court and DCFS have a continuing duty to inquire about the possible Indian status of the child. (§ 224.3, subd. (a) & (c).)

5

We review the trial court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence. (*In re Christian P.* (2012) 208 Cal.App.4th 437, 451.) Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child. (*In re E.W.* (2009) 170 Cal.App.4th 396, 402; *In re S.B.* (2005) 130 Cal.App.4th 1148, 1162.)

I

Father argues the ICWA notice to the Cherokee tribes was inadequate because it did not provide any information about his parents besides their names. He contends the lack of information was especially prejudicial in light of the Cherokee Nation's request for his father's full name and birth date.

Father concedes that he retracted his claim of Cherokee ancestry at the October 2010 hearing. But he argues ICWA was triggered again when the Cherokee Nation requested additional information about his father. Father is incorrect. A reason to know that the proceeding may involve an Indian child arises when "[a] person having an interest in the child, including . . . a tribe . . . provides information suggesting the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (§ 224.3, subd. (b)(1).) The Cherokee Nation did not provide any information suggesting the children were eligible for membership. It stated only that the claim of Cherokee ancestry could not be verified or validated without additional family history information. The statement was made in response to an ICWA notice premised on father's original claim that he had Cherokee ancestry. The judicial officer who ordered the ICWA notice was new to the case and apparently unaware of father's retraction of his ICWA claim. Since father already had retracted that claim, there was nothing to verify or validate. No ICWA notice was required under the circumstances. (See *In re Jeremiah G.* (2009) 172 Cal.App.4th 1514, 1521 [no ICWA notice required where father retracted earlier claim he may have Indian heritage].)

6

Even were the ICWA notice requirement triggered in this case, we are not shown that the notices to the Cherokee tribes failed to include available relevant information. Father claimed Cherokee ancestry through his own father, who was deceased. The ICWA notice listed the first and last names of the children's paternal grandfather as they appeared on father's birth certificate. The birth certificate indicates the grandfather did not have a middle name. Thus, there is no basis to conclude the notice failed to include the grandfather's full name.

Father's birth certificate indicated the grandfather was 35 years old at the time of father's birth in 1972. But it did not list the grandfather's actual birth date. Father argues his mother could have provided that information to DCFS. He relies on cases where information could easily be obtained from an individual who had appeared in the proceeding. (See *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397 [agency did not follow up with father who was gathering information and did not interview relatives involved in proceedings]; *In re Francisco W.* (2006) 139 Cal.App.4th 695, 699–700, 704 [information could easily have been obtained from paternal grandmother who claimed Cherokee heritage, spoke to social worker, and attended hearings]; *In re S.M.* (2004) 118 Cal.App.4th 1108, 1113, 1116 [agency had access to paternal grandmother and de facto parent, who claimed Cherokee ancestry].)

There is no evidence the children's paternal grandmother appeared in this proceeding, was otherwise available to DCFS, or had relevant information about the paternal grandfather. At the dispositional hearing in October 2010, father made statements that suggested he lived with his mother and she might be available to help him care for the children. But this suggestion is not supported by the record. The home assessment of his declared address in Temple City showed father lived there alone in a one-bedroom apartment. At the end of 2010, father dropped off the children at a DCFS office, claiming he could not care for them because he had lost his income, was about to lose his apartment, and had no family support. With the exception of a brief reappearance in June 2011 and a new declared address in Lancaster, father did not maintain contact with DCFS for the remainder of the case. Nothing in the record

7

indicates DCFS had easy access to the paternal grandmother at the time the Cherokee Nation requested additional information in the fall of 2011, or that the requested information could have been obtained from her.

Early on in the case, DCFS reasonably attempted to obtain ICWA information from father and to get in touch with the paternal grandmother. Father impeded the inquiry, telling the social worker that his mother was either at the hospital or had no telephone. When DCFS complained to the court, father retracted his claim of Indian ancestry. DCFS was not required to "cast about" for information or "make further inquiries based on mere supposition." (*In re K.M.* (2009) 172 Cal.App.4th 115, 119.) The juvenile court correctly concluded ICWA did not apply to father.

II

Mother argues the ICWA notices to the Choctaw tribes omitted crucial information about her family history. This argument is partly based on mother's assumption that the December 2011 notices did not include the documents pertaining to her paternal grandmother's efforts to enroll one of her sons in the Choctaw Nation. The record indicates the documents were attached to those notices and listed in a cover letter.

Mother also contends the notices were inadequate because they failed to state that her grandmother Martha N. and her great-grandparents H.P. and L.P. appeared on the 1906 Choctaw Nation Freedmen Rolls. We granted mother's request for judicial notice of the relevant excerpts from the 1906 Choctaw Nation Freedmen Rolls prepared by the Dawes Commission for the Five Civilized Tribes. To place mother's argument in context, a short historical note is in order. The Choctaw Nation owned slaves and fought on the side of the Confederacy during the Civil War. The 1866 treaty between the Choctaw Nation and the United States abolished slavery, but the Choctaws resisted adopting their former slaves (or freedmen) until 1883. (*Choctaw Nation v. U.S.* (1943) 318 U.S. 423, 424–425.) The Dawes Commission was created by Congress in 1893 to negotiate with the Five Civilized Tribes (Creeks, Cherokees, Choctaws, Chickasaws and Seminoles) for the allotment of their tribal lands in severalty. (*Id.* at p. 425, fn. 5.) The Commission also was empowered to determine citizenship and complete citizen rolls for

8

the five tribes.  (*Garfield v. Goldsby* (1908) 211 U.S. 249, 258.)  The Act of April 26, 1906 (34 Stat. 137), provided that the rolls should be completed by March 4, 1907, after which date the Secretary of the Interior had no jurisdiction to approve enrollments.  (*Id.* at p. 260.)  The Dawes Commission created separate rolls for "Indians by blood" and freedmen.  It recorded the blood quantum of individuals listed on the "Indian by blood" rolls, but not of those listed on the freedmen rolls.  (Spruhan, *A Legal History of Blood Quantum in Federal Indian Law to 1935* (2006) 51 S.D. L.Rev. 1, 41, and sources cited.)

Mother is correct that the box on page 8 of the ICWA-030 notice form, regarding ancestors on the 1906 Final Roll, was not checked.  The court ultimately declined to order that a new notice be sent to the Choctaw Nation based on the freedmen roll that was submitted at the April 2012 hearing.  According to mother, the failure to transmit that information was prejudicial error because the Choctaw Nation did not have a meaningful opportunity to search the tribal registry.

We disagree.  Although information about the children's great-great-grandparents was not required to be included in ICWA notices  (see *In re J.M.* (2012) 206 Cal.App.4th 375, 381), the documents actually sent with the December 2011 notices referenced mother's great-grandparents, H.P. and L.P., and indicated that H.P. was enrolled as a freedman.  It also is unlikely the Choctaw Nation was impeded in its genealogical research since the Cherokee Nation could trace mother's family history back to H.P. and L.P. from the March 2011 notices, which were sent out before DCFS had obtained any information about mother's great-grandparents.  In its final response, the Choctaw Nation did not request any additional information; nor did it recite the disclaimer included in its initial response that lack of information may hinder the process.  Instead, the tribe's final response, in no uncertain terms, discouraged further inquiries as futile.  In light of that response, we cannot conclude that sending new notices with the information mother considers crucial is likely to change the tribe's determination.

DCFS suggests that the reason the children were found not eligible for membership is that mother's genealogy does not show they are lineal descendants of a Choctaw Indian "by blood," as required by the Constitution of the Choctaw Nation.  In its

9

response to the first ICWA notice, the tribe advised that its Constitution reserves membership to "all Choctaw Indians by blood whose names appear on the final rolls of the Choctaw Nation approved pursuant to Section 2 of the Act of April 26, 1906 (34 Stat. 136) and their lineal descendants." Mother takes issue with DCFS's suggestion, arguing that lineal descendants of persons appearing on the 1906 Final Rolls should be considered eligible for membership in the Choctaw Nation. But the 1906 Freedmen Rolls, on which mother exclusively relies, do not record any quantum of Indian blood.

The "by blood" requirement in the Choctaw Nation's Constitution, as well as others, has been interpreted as excluding the descendants of freedmen. (*Allen v. Tribal Council* (2006) 9 Okla. Trib. 255.) The exclusion of the descendants of former slaves of the Five Civilized Tribes is a matter of ongoing controversy. (See, e.g., *Cherokee Nation v. Nash* (N.D.Okla. 2010) 724 F.Supp.2d 1159.) It cannot be addressed in this dependency proceeding since membership criteria are the tribe's prerogative, and its determination of a child's eligibility for membership is conclusive for purposes of ICWA. (44 Fed.Reg. 67584, 67586 (Nov. 26, 1979); § 224.3, subd. (e)(1); *In re Jack C., III* (2011) 192 Cal.App.4th 967, 978.)

We find no error in the juvenile court's decision to defer to the Choctaw Nation's determination that further inquiries about the children's eligibility for membership would be futile. Any omissions from the ICWA notices were harmless as the information mother wants included does not meet the tribe's membership criteria.

**DISPOSITION**

The order is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>

EPSTEIN, P. J.

We concur:

WILLHITE, J.

SUZUKAWA, J.

10