Filed 3/17/14  Michael M. v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| MICHAEL M., | C075435 |
| Petitioner, | (Super. Ct. No. J06046) |
| v. | |
| THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, | |
| Respondent; | |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

Petitioner Michael M., father of the minor J. M., seeks an extraordinary writ (Cal. Rules of Court,[1] rule 8.452) to vacate the order of the juvenile court made at the six-month review hearing terminating his reunification services and setting a Welfare and

---

[1]     References to rules are to the California Rules of Court.

1

Institutions Code[2] section 366.26 hearing. Finding merit in two of petitioner's contentions, we grant the petition in part.

FACTS

The petition raises issues of noncompliance with the notice provisions of the Indian Child Welfare Act (ICWA). The underlying facts of the dependency are not at issue and may be briefly stated.

J. M. was born in May 2012 and his mother, who is developmentally delayed, was unable to care for him. In June 2012, the Human Services Agency of San Joaquin County (agency) developed a safety plan that required petitioner to be J. M.'s primary caretaker. At a team decision meeting in July 2012, petitioner and his sister claimed Blackfeet and Cherokee heritage.

The next day petitioner, who was on probation and parole, failed to participate in drug testing and was remanded into custody. The agency obtained a protective custody order for J. M.

On July 20, 2012, the agency filed a petition alleging that J. M. came within juvenile court jurisdiction pursuant to section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). On July 23, 2012, J. M. was ordered detained. That same day petitioner signed a parental notification of Indian status (form ICWA-020) claiming Blackfeet and Cherokee heritage.

In September 2012, the agency filed a jurisdiction report stating that father and the paternal aunt had indicated Blackfeet and Cherokee heritage. Following a contested hearing in October 2012, the juvenile court took jurisdiction of J. M.

On June 4, 2013, the agency sent notice of child custody proceeding for Indian child (form ICWA-030) to the Blackfeet tribe, the three Cherokee tribes, and the Bureau

---

[2]    Undesignated statutory references are to the Welfare and Institutions Code.

2

of Indian Affairs (BIA). The notice included information on the parents and the paternal grandmother but no information on the paternal grandfather or other paternal ancestors.

On June 7, 2013, the agency sent form ICWA-030 notice to the foregoing entities plus several Chippewa and Chickasaw tribes. Although the record contains no assertion of Chippewa or Chickasaw heritage by either parent, the parties do not dispute that notice to the Chippewa and Chickasaw tribes was required.

The agency sent notice to three Chippewa tribes using addresses that differed from the ones listed in the Federal Register. (79 Fed.Reg. 4748-4753 (Jan. 29, 2014).)

The agency did not send notice to the Nottawaseppi Huron Band of the Potawatomi, which the Federal Register indicates has Chippewa heritage. But the Agency did send notice to the Hannahville Indian Community of Michigan, which is listed in the Federal Register immediately above the Nottawaseppi Huron Band. (79 Fed.Reg., *supra*, at pp. 4748-4753.) The Hannahville Indian Community has no Chippewa heritage and evidently received the notice intended for the Nottawaseppi Huron Band. The agency also sent notice to the "Trenton Indian Service Area, Chippewa," which is not listed in the Federal Register. Father does not claim this last item was prejudicial.

On June 7, 2013, the agency filed a disposition report stating that ICWA does or may apply in that J. M. may have Blackfeet or Cherokee heritage. The report stated that responses from the Blackfeet and Cherokee tribes and the BIA to the notices sent three days previously were pending. There was no reference to the Chippewa or Chickasaw tribes.

At a contested disposition hearing on September 18, 2013, the juvenile court found that J. M. may be an Indian child and that proper ICWA notice of the hearing had been given. The court directed the agency to provide reunification services to father.

On November 1, 2013, the agency filed a status report for the six-month review hearing. The report asserted that the Blackfeet, Chippewa Cree Indians, and White Earth Band of Chippewa (who were served at correct addresses) had not responded to the

ICWA notice regarding J. M.'s tribal status or eligibility for enrollment. All other tribes (including the ones served at wrong addresses) had responded and had indicated that J. M. is not eligible for enrollment. In a tabular summary of the ICWA notice proceedings, the report indicated that notice to the Blackfeet, Chippewa Cree and White Earth Band was "Pending Verification" even though the notices had been sent more than 60 days previously. (Rule 5.482(d).) The report did not include any return receipts or any responses received from the BIA or the tribes. (Rule 5.482(b).) The report stated that father had received more than 15 months of reunification services and that he had failed to make reasonable progress on his case plan. Thus, the report recommended that reunification services be terminated.

At the review hearing on December 12, 2013, the juvenile court adopted the agency's recommendations, terminated father's reunification services, and scheduled a section 366.26 hearing for April 9, 2014. The court did not address the issue of ICWA compliance.

## DISCUSSION

### I

*Failure To File Return Receipts And Responses From Tribes*

We first consider father's contention that the petition should be granted because the agency failed to comply with section 224.2 in that it failed to file return receipts and responses from the tribes. The point has merit.

"ICWA furthers the federal policy ' " 'that, where possible, an Indian child should remain in the Indian community . . . .' " [Citation.]' [Citation.] It requires that notice of the dependency proceeding be given to the relevant tribe or tribes whenever 'the court knows or has reason to know that an Indian child is involved . . . .' [Citation.] The notice must include the names (including maiden, married, and former names), current and former addresses, birth dates, and places of birth and death of the child's parents, grandparents, and great-grandparents, 'if known.' [Citations.] The court and [the

4

agency] have a continuing duty to inquire about the possible Indian status of the child. [Citation.]" (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1250-1251.)

Section 224.2, subdivision (c), provides, with exceptions not here pertinent, that "[p]roof of the notice, including copies of notices sent and all return receipts and responses received, shall be filed with the court in advance of the hearing." Rule 5.482(b) provides that "[p]roof of notice filed with the court must include *Notice of Child Custody Proceeding for Indian Child* (form ICWA-030), return receipts, and any responses received from the Bureau of Indian Affairs and tribes."

The agency concedes that it "failed to file all return receipts and responses received as they pertain to the ICWA notices sent" on June 4 and June 7, 2013. We accept the agency's concession. The agency offers no excuse for its failure to comply with section 224.2, subdivision (c), and none appears. We shall direct the juvenile court to order the agency to file the return receipts and responses.

## II

### *Notice To Nottawaseppi Huron Band*

We next consider father's contention that the petition should be granted because the agency failed to provide ICWA notice to the Nottawaseppi Huron Band. The agency effectively concedes that the case should be remanded for the purpose of sending this notice. We agree with the parties on this point.

In this case, the agency filed a copy of its ICWA-030 notice to the tribes, but the Nottawaseppi Huron Band is not listed as a recipient of the notice--perhaps because the notice was sent inadvertently to the Hannahville Indian Community of Michigan. We shall direct the juvenile court to order the agency to give proper ICWA notice to the Nottawaseppi Huron Band.

## III

### *Responses Of Blackfeet, Chippewa Cree, And White Earth*

Father next claims the petition should be granted because, at the December 2013, hearing, neither the agency's counsel nor any social worker made any assertions about

5

whether responses had been received from the Blackfeet tribe, the Chippewa Cree tribe or the White Earth Band, each of which had been listed on the November 2013 tabular summary as "Pending Verification." We disagree.

Rule 5.482(d)(1) provides in relevant part: "If after notice has been provided as required by federal and state law and neither the tribe nor the Bureau of Indian Affairs has provided a determinative response within 60 days after receiving that notice, then the court may determine that the Indian Child Welfare Act does not apply to the proceedings." Father does not dispute that this rule applies in the present context of multiple tribes.

The Blackfeet tribe, the Chippewa Cree tribe and the White Earth Band each failed to respond to the June 2013 ICWA notices within 60 days or at any time prior to the filing of the November 2013 status review report. Under rule 5.482(d)(1), the failure to respond supports a finding that J. M. is not a member of or eligible for membership in any of those tribes. This is so, regardless of the fact that the November 2013 report did not discuss the rule and, instead, listed the tribes as "Pending Verification."

The November 2013 report was entered into evidence at the December 2013 hearing and showed the lack of timely response. Any tribal response after the filing of the report would perforce have been untimely. Thus, no further showing by the agency's counsel or social worker at the December 2013 hearing was required. We reject father's claim that there was "nothing to indicate" that "those tribes had failed to respond in a timely manner."

Under rule 5.482(d)(1), the lack of timely response allows the court to infer *that ICWA does not apply* with respect to the nonresponding tribe. Contrary to father's argument, the November 2013 report supports an inference that J. M. "is not eligible for membership in those tribes."

6

*Responses Of Fond du Lac, Red Lake And Sokaogon*

Father contends the agency's use of wrong addresses for the Fond du Lac Band, the Red Lake Band, and the Sokaogon Community was prejudicial in light of the agency's failure to file the return receipts and responses required by section 224.2. He argues the agency's tabular summary, attached to and incorporated in the November 2013 report, does not cure the failure to file receipts and responses because "no social worker declared under penalty of perjury that proper notices were sent or that proper responses were received." Accepting this argument would require us to bar the juvenile court from considering *any* of the facts in the agency's unverified report. Nothing in the record suggests that the tabular summary incorrectly reflects the information the agency received from the tribes. Father claims the summary's assertion that the BIA had indicated J. M. was "Not Eligible" is unusual because "the BIA does not usually do that." But this irregularity raises only a speculative inference of other error in the summary.

The agency's use of wrong addresses is harmless as to tribes that respond to the notice. "[O]bviously the . . . tribes that responded each received the notice." (*In re S.B.* (2009) 174 Cal.App.4th 808, 812.) Because the Fond du Lac Band, the Red Lake Band and the Sokaogon Community each responded that J. M. was not eligible for membership, the use of wrong addresses was harmless. The agency claims resending the notice to the three tribes is in J. M.'s best interest, but it offers no argument or authority for its claim. In any event, the agency retains discretion to resend the notices if it so desires.

Father counters that the agency's failure to file return receipts and responses was not harmless, in part because the form ICWA-030 notice to the tribes was defective. Father argues that the information provided for his parents was "seriously lacking," and the agency did not demonstrate that this "was all the information [it] had, particularly because, in addition to Father, it was in contact with Father's sister and placed [J. M.] with her and her husband."

7

But nothing in the record suggests that the ICWA-030 notice somehow contained *less than all* the information the agency had.  There is no showing that father or the paternal aunt had provided any information that the agency failed to include in the notice.  Nor does the record demonstrate that further inquiry would have led the agency to additional information about paternal relatives.  (*In re D.N., supra,* 218 Cal.App.4th at pp. 1250-1251.)  We decline to infer from the contents of the ICWA-030 notice that the use of incorrect addresses for the three tribes somehow was prejudicial.

### DISPOSITION

The petition for extraordinary writ is granted as to the claims that the agency failed to file return receipts and responses with the juvenile court and failed to send ICWA notice to the Nottawaseppi Huron Band of the Potawatomi.  The petition is denied as to the remaining issues.

Let a peremptory writ issue directing the juvenile court to order the agency to send proper ICWA notice to the tribe and to file all ICWA return receipts and responses with the juvenile court.  The decision is final forthwith as to this court.  (Rule 8.490(b).)  The request for stay of the juvenile court proceedings is denied.


　　　　　　　　　　　　　　　　　　　　　　ROBIE　　　　　　　, Acting P. J.

We concur:


　　　BUTZ　　　　　, J.


　　　DUARTE　　　　, J.

8