Filed 2/5/16  Melissa G. v. Superior Court CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MELISSA G., | D069084 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. EJ3872) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

PROCEEDINGS in mandate after referral to a Welfare and Institutions Code

section 366.26 hearing.[1]  Gary M. Bubis, Judge.  Petition denied.

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner.

No appearance by Respondent.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Melissa G. seeks review of a juvenile court order setting a hearing under section 366.26 with respect to her minor son, William K.[2]  She contends the San Diego County Health and Human Services Agency (the Agency) did not comply with the Indian Child Welfare Act (ICWA) because it failed to respond to a tribe's request for additional information.  She challenges the juvenile court's finding that ICWA did not apply and seeks a limited remand for purposes of ICWA compliance.  The Agency argues the petition is moot, because a subsequent hearing reflected there was no additional information to provide.  We find the record supports the Agency's position, deem the premature ICWA finding harmless, and deny the petition as moot.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

William was born in January 2015.  Shortly thereafter, the Agency filed a petition on his behalf under section 300, subdivision (b) due to substance abuse by Melissa and the alleged fathers.

---

[2]     Melissa also sought a stay of the section 366.26 hearing, which we denied on December 7, 2015.  She does not raise any other issues in her writ petition.  Neither William nor the alleged fathers join the petition.

[3]     We limit the facts here to those relevant to Melissa's petition.

According to the detention report, Melissa indicated the maternal grandmother, Linda M., would have information about possible Native American heritage. Linda told the social worker her father, Harold M., was "linked to the Cherokee tribe" through his father, George M., and provided information regarding dates of birth, death, and places of residence. Melissa also submitted form ICWA-20 (Parental Notification of Indian Status), on which she indicated she had "possible Cherokee" ancestry. In February 2015, the Agency sent ICWA notices on form ICWA-030 (Notice of Child Custody Proceeding for Indian Child) to, among others, the Cherokee Nation, Eastern Band of Cherokee Indians, and United Keetoowah Band of Cherokee. The form identified Linda, Harold, and George, as well as others, including Ruby M. and Mary M.

In its March 2015 addendum report and September 2015 status review report, the Agency identified and attached responses from the Cherokee tribes. The Eastern Band of Cherokee Indians and United Keetoowah Band of Cherokee each indicated William was not eligible for membership and they would not intervene. The Cherokee Nation (hereafter, the tribe or Cherokee Nation) wrote to the Agency on March 30, 2015, indicating the information was not complete and requesting George's middle name and date of birth and Mary's maiden name, middle name, and date of birth, as well "dates of birth for everyone involved, their relationship to the child . . . , and maiden names of all females listed." The letter requested a written response with any and all additional information and also required the Agency to respond if it was unable to find additional information. On April 30, 2015, the tribe sent the Agency another letter indicating it had not received a response and was closing its inquiry.

At the initial six-month review hearing in September 2015, county counsel noted "I don't believe we have addressed ICWA."  The juvenile court stated "Oh, the [ICWA] does not apply, I have a note to make that finding."  The court held a contested six-month review hearing in October 2015, at which it set a permanent plan selection hearing under section 366.26 for February 2016.  Melissa filed a notice of intent to file a writ petition.

In November 2015, the juvenile court held a special hearing regarding the ICWA.[4] Her counsel expressed concern about the tribe's letters, noting the March 30 letter sought "information about the maternal great-grandfather" and the April 30 letter indicated the Agency never responded with that information.  She requested the court vacate its ICWA finding and that the Agency respond, "even if the response is that they don't have that info."

County counsel objected to the finding being vacated, maintaining it was "mother's prerogative" to provide the information, but indicating the social worker nevertheless called the maternal grandmother.  She now stated Indian heritage did not flow through George, but rather through Ruby.  County counsel also indicated she had "none of those people's date[s] of births."  She then noted "There is, however, a new name.  The mother of Ruby -- her name is [M.S.].  The Agency is happy to let the Cherokee Nation know that we have a new name . . . .  But we have no new dates of birth unless the mother is going to provide them to us today."  The Agency confirmed it did

_____

4    The Agency provided the transcript of the November 2015 hearing in a motion to augment the record.  We grant that motion, for the reasons discussed *post*.

4

not have access to George's middle name and date of birth or Mary's maiden name, middle name, and date of birth.

The juvenile court then inquired:  "Because the mother is not giving that to you? Do you have the information?" - apparently directing the latter question to Melissa's counsel.  Melissa's counsel responded, in relevant part:  "No.  The mother is not withholding the information.  My understanding is she filled out the [ICWA-] 030.  I didn't fill it out with her.  I don't have access to that form.  The timing of this was brought . . . to help everyone because at the writ level it will be filed.  We thought this was the more practical approach . . . ."  The court stated "[b]ecause you don't have that information, you can't provide that.  Whatever information you have and that's been supplied to you, provide to the Nation . . . .  I'm going to affirm my finding, but please follow up at the next hearing as to any results.  Obviously, if you get more information or they're claiming that he's an Indian child, set it for a special right away."  County counsel asked that Melissa's counsel and Melissa provide any additional information as soon as possible and indicated "[o]therwise, we'll go on the information we have now, and we will respond to the tribe."

Melissa proceeded to file her writ petition in December 2015.

DISCUSSION

A.  *Appellate Motions*

Melissa requests we take judicial notice of eligibility criteria for the Cherokee Nation.  Because those criteria are not relevant to our resolution of her petition, we deny her request.  (See *American Cemwood v. American Home Assurance Co.* (2001) 87

5

Cal.App.4th 431, 441, fn. 7 [" 'Although a court may judicially notice a variety of matters . . . , only relevant material may be noticed.' "].)

The Agency moves to augment the record to include the November 2015 hearing transcript and, because its motion is untimely, for relief.  We find the hearing transcript suitable for augmentation; it is relevant, was before the juvenile court, and pertains to ICWA compliance, rather than the merits of the dependency proceeding.  (See, e.g., *Alicia B. v. Superior Court* (2004) 116 Cal.App.4th 856, 866-867 (*Alicia B.*) [permitting augmentation of the record with ICWA notices not filed in the juvenile court until the writ proceeding, where, among other things, they were relevant and appellant was challenging ICWA notice, not termination of parental rights]; *In re A.B.* (2008) 164 Cal.App.4th 832, 841, 843 (*A.B.*) [permitting augmentation for an ICWA form from a separate dependency proceeding, noting the ICWA issue was "distinct from the substantive merits"]; cf. *In re Zeth S.* (2003) 31 Cal.4th 396, 400 [a reviewing court generally may not "receive and consider postjudgment evidence that was never before the juvenile court, and rely on such evidence" to reverse a judgment terminating parental rights].)

The Agency acknowledges its request is untimely.  (California Rules of Court, rule 8.452(e)(2), (5).)[5]  However, it explains this delay was due to preparation of the reporter's transcript for the November 2015 hearing, contending county counsel

---

[5]     All further rule references are to the California Rules of Court unless otherwise indicated.

"immediately requested" the transcript, but did not receive it until December 29.[6]  It appears the Agency's response itself was also late, as it secured an extension until December 24, but then filed its response on December 31 (followed by the motion on January 4).  Nevertheless, assuming the Agency received the transcript on December 29, there was nothing dilatory in filing the response and motion shortly thereafter.  We have discretion under rule 8.450(d), to extend time under rule 8.452 for "an exceptional showing of good cause" and we find the Agency has established good cause.  (Rules 8.450, 8.452; cf. *A.B.*, *supra*, 164 Cal.App.4th at p. 840 [granting extension for augmentation in juvenile appeal proceeding under rule 8.416(f), on showing of good cause].)  There also is no prejudice to Melissa; her trial counsel was present at the November hearing and she had an opportunity to respond to the motion to augment, although she did not do so.  (See *A.B.*, at p. 840.)

Further, we find that denying the leave request and, in turn, the motion to augment, "would be counterproductive to 'the state's strong interest in the expeditiousness and finality of juvenile court dependency proceedings.' "  (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 867; see *In re Louis S.* (2004) 117 Cal.App.4th 622, 630, fn. 4 (*Louis S.*) ["Granting Agency's request to augment the record avoids further delay.]; *A.B.*, *supra*,

---

6    The Agency provides no evidence in its motion to support these assertions. However, we note it earlier sought additional time to file its response, due to the delay in transcript preparation; that request was made under penalty of perjury by county counsel and was executed in California, thus operating as the functional equivalent of a declaration.  (Cf. Code of Civ. Proc., § 2015.5; *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 606 [explaining § 2015.5 "defines a 'declaration' as a writing that is signed, dated, and certified as true under penalty of perjury," as well as either reflecting execution in California or referencing California law].)

164 Cal.App.4th at p. 841 ["[A]dmission of the evidence . . . would . . . prevent further delay."].) Accordingly, we grant the Agency's requests.

## B. *Background on the ICWA*

Congress enacted the ICWA "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . ."  (25 U.S.C. § 1902; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)  "[T]o be an Indian child, a child must be either (1) a member of an Indian tribe, or (2) both eligible for membership in an Indian tribe and the biological child of a member of an Indian tribe.  (25 U.S.C. § 1903(4).)"  (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162, italics omitted.)  In proceedings where the court knows or has reason to know an Indian child is involved, the Agency must notify the affected Indian tribes about the proceedings and of their right to intervene.  (25 U.S.C. § 1912(a); see *In re Gerardo A*. (2004) 119 Cal.App.4th 988, 994; see also § 224.2, subds. (a), (b).)  "The notice sent to the . . . Indian tribes must contain enough information to be meaningful. [Citation.]  To enable a court to review whether sufficient information was supplied, [the Agency] must file with the court the ICWA notice, return receipts, and responses received from the . . . tribes."  (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 865.)  "Juvenile courts and child protective agencies have ' "an affirmative and continuing duty" ' to inquire whether a dependent child is or may be an Indian child."  (*In re Kadence P.* (2015) 241 Cal.App.4th 1376, 1386 (*Kadence P.*); § 224.3, subd. (a).)

8

"We review the trial court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251 (*D.N.*).) ICWA notice and inquiry deficiencies may be deemed harmless under certain circumstances. (See, e.g., *ibid.* [noting harmless error may exist "when, even if proper notice had been given, the child would not have been found to be an Indian child"]; *In re Miracle M.* (2008) 160 Cal.App.4th 834, 847 (*Miracle M.*) [finding harmless error where parent did not explain how "reversing the court's orders as to (the minor) would produce any additional information that this child is an Indian child"].) "Reversal is not warranted . . . when the court's noncompliance with the [ICWA] inquiry requirement constitutes harmless error." (*A.B.*, *supra*, 164 Cal.App.4th at p. 839; see also *In re C.D.* (2003) 110 Cal.App.4th 214, 226 ["[W]e find (the agency) complied with the notice requirements of the ICWA while this appeal was pending, and we will not reverse the dispositional order on that basis."].)

C. *Analysis*

Melissa contends the juvenile court's September 2015 ICWA finding must be reversed because the Agency did not comply with ICWA based on its failure to respond to the tribe's request for additional information.

The record reflects no response by the Agency and the Agency does not contend it provided one. The ICWA's purpose of "promot[ing] the stability and security of Indian tribes" is "not promoted when the Agency does not respond to a tribe's request for information." (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1117.) In declining to respond to the tribe, the Agency neglected its continuing obligations under the ICWA. (*Kadence*

9

*P.*, *supra*, 241 Cal.App.4th at p. 1386; *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397 (*A.G*); § 224.3, subd (a).) At the time of the juvenile court's September ICWA ruling, the Agency also had not provided any indication it even looked into the tribe's questions. (See *Louis S.*, *supra*, 117 Cal.App.4th at p. 630 ["The burden is on the Agency to obtain all possible information about the minor's potential Indian background and provide that information to the relevant tribe . . . ."]; see also *A.G.*, at p. 1397 [finding agency erroneously failed to follow up with a father who reported Native American heritage and indicated he was gathering more information, or with other family members, and noting the agency's "continuing duty of inquiry"].) Given these deficiencies in the Agency's efforts, the September ICWA ruling was not supported by substantial evidence.[7]

However, the ruling was harmless. (*D.N.*, *supra*, 218 Cal.App.4th at p. 1251.) It was the maternal grandmother who initially indicated that Cherokee heritage flowed through George, leading the Agency to send the Cherokee Nation an ICWA notice identifying George and others. The tribe's information request encompassed George's middle name and birth date, Mary's maiden name, middle name, and birth date, and birth dates for everyone involved (along with relationships to the minor and maiden names for the women). When the social worker followed up with the maternal grandmother, she no longer claimed heritage flowed through George, arguably rendering that portion of the follow-up request moot (and neither county counsel nor Melissa's counsel had that

---

7      It is unclear why Melissa's trial counsel did not point out the Agency's failure to respond until the November hearing. Had she raised this issue at the September hearing, she might have avoided the premature ICWA finding and this writ proceeding.

10

information, regardless).  As for the other inquiries, although counsels' statements at the November hearing could have been clearer, they reflect that neither the Agency, nor Melissa, had the requested information.  Even if the Agency had responded to the tribe then, doing so could not have established Cherokee Nation eligibility.  (See *D.N.*, *supra*, 218 Cal.App.4th at p. 1251; *Miracle M.*, *supra*, 160 Cal.App.4th at p. 847.)

Finally, we agree Melissa's writ petition is moot.  The question of mootness must be decided on a case-by-case basis, and we find appropriate circumstances exist here.  (See *In re Angela R.* (1989) 212 Cal.App.3d 257, 264.)  By the time the court affirmed its ICWA finding in November, there was substantial evidence to support it.  Reversal and remand so the Agency can inform the tribe it has no further information "would serve no purpose other than delay."  (*A.B.*, *supra*, 164 Cal.App.4th at p. 843; see also *In re Shane G.* (2008) 166 Cal.App.4th 1532, 1539 ["Where, as here, the record is devoid of any evidence a child is an Indian child, reversing  . . . for the sole purpose of sending notice to the tribe would serve only to delay . . . ."].)

We note our ruling is limited to the specific issue raised by the petition and reiterate the importance and continuing nature of ICWA's notice and inquiry requirements.  The Agency represented at the November hearing that it would respond to the tribe with the information it had and, separately, would be happy to let the tribe know it had a new name.  We expect the Agency has already provided this information or, if it has not, will do so promptly and prior to the section 366.26 hearing.

11

DISPOSITION

The petition is denied. This denial is without prejudice to petitioner's bringing any new information relevant to ICWA compliance to the juvenile court's attention at the section 366.26 hearing.


HUFFMAN, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.