Filed 8/19/14  In re T.M. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | B253175 (Los Angeles County Super. Ct. No. CK95152) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRANDON M.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline H. Lewis, Commissioner.  Conditionally reversed.

Cristina Gabrielidis, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

* * * * * *

Brandon M. (father) appeals an order terminating his parental rights to his daughter T.M. pursuant to Welfare and Institutions Code section 366.26,[1] contending the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court did not comply with the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1900 et seq.). We agree. We conditionally reverse the order terminating father's parental rights and remand for compliance with the ICWA.

## PROCEDURAL BACKGROUND[2]

On August 23, 2012, DCFS filed a section 300, subdivision (b) petition on behalf of 23-month-old T.M. , alleging F.F. (mother) and father both had histories of drug abuse and currently abused drugs (marijuana for father and marijuana and cocaine for mother), cared for T.M. while under the influence of drugs, and mother went to father's home and brandished a handgun at him in T.M.'s presence.[3] Although father had initially denied any American Indian heritage and DCFS could not locate mother to determine whether she had any American Indian Heritage, both parents filed ICWA-020 forms claiming Cherokee ancestry. In his form, father indicated " [E.V.] has information."

At the August 23, 2012 detention hearing, mother testified neither she nor the maternal grandmother were registered members of the Cherokee tribe, but she believed her great-grandmother was a member. Mother could not provide a registration number because her great-grandmother had passed away. Father testified his mother told him he had Cherokee heritage, but neither he nor his mother were registered. Commissioner Lewis (who presided over all hearings except for the January 31, 2013 hearing, discussed below) ordered mother's and father's counsel to each complete an ICWA-030 form,

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[2]     We need not recite the underlying facts except as relevant to decide the narrow issue on appeal.

[3]     The petition was also filed on behalf of T.M.'s four-year-old half sister M.W., who had a different father. The proceedings as to M.W. are not at issue here.

including how to reach the relatives that might have more information. Because no one was registered with the Cherokee tribe, the court found there was no reason to know T.M. would fall within the ICWA, although the court ordered DCFS to investigate and provide a report as to the possible heritage.

On the merits of the petition, the court found T.M. fell within section 300, subdivision (b) and detained her from the parents' custody.

On September 27, 2012, DCFS filed a first amended petition adding allegations that father abused cocaine, PCP, and opiates, in addition to marijuana; mother's home was filthy and infested with fleas, had no gas or electricity, and had broken windows; and mother exposed T.M. and her half sister to sexual behavior between adults, causing them to exhibit sexualized behaviors.

In the jurisdiction/disposition report, DCFS reported that T.M.'s paternal grandmother, Eleonora C., was interviewed about T.M.'s Indian ancestry. She said the paternal great-great-grandparents, Eleonora H. and Murphy H., had Cherokee blood, but were not registered. Both were deceased. She said the paternal great-grandmother Hazel D. might live in New Orleans, but she did not know if she was still alive. She said the paternal great-grandfather Elly C. passed away in 1986, and she had never met his parents and had little information about his side of the family.

At the October 25, 2012 adjudication and disposition hearing, the court found T.M. fell within the court's jurisdiction and removed her from both parents. The court found father's ancestry did not provide reason to know T.M. would fall within the ICWA because the information provided by DCFS was "too attenuated and vague to trigger even notices" under the ICWA. The court found insufficient information to address mother's heritage, so it ordered DCFS to provide a supplemental report to address possible Indian heritage on mother's side of the family.

On November 28, 2012, a social worker attempted to contact mother about her Indian ancestry, but was unable to speak with her. The next day the social worker spoke with the maternal grandmother L.F., and she reported that she believed the maternal great-grandparents Lula D. and Lester, Jr. F. were half "Blackfoot Cherokee," but she did

3

not know if they were registered. She said her maternal great-uncle Charles William F. was registered with the tribe, but when the social worker contacted him, he said no one in the family had been registered. He believed, however, that some of his family had Indian heritage.

At a December 6, 2012 hearing, the juvenile court reviewed the DCFS's investigation and did not believe it had reason to know T.M. would fall within the ICWA. But out of an abundance of caution, it found there was enough information to trigger ICWA notice requirements and ordered DCFS to issue appropriate notices to the Blackfeet and Cherokee tribes. The court set the matter for a progress report and hearing on January 3, 2013 and ordered the parents' counsel to review the notices and inform the court whether any new or different information should be included.

On December 20, 2012, DCFS sent ICWA-030 notices to the Blackfeet Tribe,[4] Eastern Band of Cherokee Indian, Cherokee Nation of Oklahoma, and the United Keetoowah Band of Cherokee, with copies sent to the parents.[5] The notices contained the following information for T.M.'s relatives:

- Mother's name, address, birth date and state of birth, and her claim her grandmother might be "Blackfoot Cherokee." Under "additional information," DCFS wrote, "Information from CWS/CMS and by maternal grandmother Lesternette [F.]"

- Father's name, address, and birth date and state of birth. Father's "tribe or band, and location" was listed as "not applicable." Under "additional information," DCFS wrote, "Paternal grandmother stated that paternal great-grandmother Eleonora [H.] [*sic*], no other information."

---

**4**  T.M.'s counsel on appeal infers that notice to the Blackfeet tribe was required only for T.M.'s half sister, who is not a part of the instant appeal. T.M. does not claim any error related to the notice to the Blackfeet tribe and we will not further address the issue.

**5**  In his opening brief, father argues the record is deficient because the ICWA-030 notices sent to the pertinent tribes regarding T.M.'s Indian heritage were not included in the record on appeal. We reject this argument because after father filed his opening brief, the record was augmented to include the ICWA-030 notices at issue, among other documents.

- Maternal grandmother's name (L.F.), address, birth date and place, and her belief her family had Cherokee heritage.

- Maternal grandfather's name (Jeffrey J.J.), his current city of residence, and his birth place and day but not year. Tribe or band was listed as "unknown."

- Maternal great-grandmother's name (Freda W.), birth place and day but not year, and date and place of death. Tribe or band was listed as "unknown."

- Maternal great-grandfather's name (Lester Jr. F.), birth date, and date and place of death. Tribe or band was listed as "unknown."

- Paternal grandmother's name (Eleonora C.) and what appeared to be a phone number for her address. Other information was listed as "unknown."

- Paternal grandfather and paternal great-grandparents were listed as "unknown."

In the "other relative information" section, the following information was included:

- Maternal great-uncle's name (Jeffrey G.J.), his city of current residence, birth place and day but not year, and Cherokee and Blackfeet for tribe or band.

- Maternal great-great-grandmother's name (Lual Made D.), state of birth, year and city of death, and Cherokee and Blackfeet for tribe or band.

- Paternal great-grandmother's name (Eleonora H.), city of birth and death, and Cherokee for tribe or band.

At a January 3, 2013 hearing, the juvenile court acknowledged the notices were sent to the listed tribes and to the parents. The court continued the matter to allow for parents' counsel to contact the parents and ensure the information in the notices was appropriate and nothing was missing.

Before the next scheduled hearing on January 31, 2013, DCFS submitted the following documents to the court: signed return receipts for the entities noticed; a letter from the Bureau of Indian Affairs acknowledging receipt of the ICWA notice but indicating it does not determine tribal eligibility; a letter from the United Keetoowah Band of Cherokee Indians in Oklahoma declining to intervene in the case because there

was no evidence T.M. was a descendant of anyone on the Keetoowah Roll based on the information supplied; a letter from the Cherokee Boys Club, Inc., on behalf of the Eastern Band of Cherokee Indians, declining to intervene in the case because T.M. was neither registered nor eligible to register as a member of the tribe based on the information supplied; and a letter from the Cherokee Nation seeking further information. The Cherokee Nation letter asked DCFS to "verify correct spelling of maternal great great grandmother Lual Made [D.], also need her date of birth. Relationship of Eleonora [H.] to the above named child. [¶] We need dates of birth for everyone involved, their relationship to the child or children in question, and maiden names of all females listed. It is impossible to validate or invalidate this claim without more complete information." (Boldface and capitalization removed.)

At the January 31, 2013 hearing, which was presided over by a different hearing officer than Commissioner Lewis, the court stated the tribes were properly noticed and it had received letters back from the tribes indicating T.M. was not an Indian child. The court found the ICWA did not apply. The court did not acknowledge the Cherokee Nation's request for further information.

On April 25, 2013, the court, again presided over by Commissioner Lewis, ordered DCFS to provide to the court all notices, letters, and return receipts related to the ICWA and prepare a supplemental report to address the ICWA.

In a May 22, 2013 interim review report, DCFS noted the ICWA did not apply based on the finding at the January 31, 2013 hearing. It also submitted a letter from the Cherokee Nation dated February 11, 2013, which indicated the Cherokee Nation had received additional information, namely: "Maternal great great grandmother Lula Made [D.]s' correct spelling" and Eleonora H.'s relationship to T.M.'s half sister. Still, the tribe was "unable to make a determination with the limited documentation we received" so it was closing the inquiry due to "inadequate documentation."

At a May 22, 2013 hearing, the juvenile court terminated reunification services and set the case for a section 366.26 hearing. With regard to the ICWA, the court appeared not to have been aware of all the available ICWA information because it said it

6

had only "one letter back from the Cherokee Nation." It ordered DCFS to notice all the tribes for the section 366.26 hearing.

On September 18, 2013, the court continued the section 366.26 hearing to October 30, 2013, because the ICWA issue remained outstanding.

Prior to the next hearing, DCFS indicated it had not received any ICWA receipts, but it noted the court had already found the ICWA did not apply on January 31, 2013. At the October 30, 2013 hearing, Commissioner Lewis apologized for not realizing another hearing officer had made the ICWA finding on January 31, 2013, in her absence. She found the ICWA did not apply and terminated the parents' rights. Father timely appealed.

## DISCUSSION

Father contends the ICWA-030 notices did not contain complete or adequate information for the tribes to determine T.M.'s Indian heritage and the juvenile court failed to ensure DCFS sent proper notices to the tribes. We agree the notices were inadequate, requiring conditional reversal and remand for DCFS to send new notices to the tribes and the juvenile court to make a new determination whether the ICWA applies based on the tribes' responses. Because new notices are required, we need not address father's other complaints about the ICWA proceedings.[6]

The ICWA provides in relevant part, "[i]n any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . ." (25 U.S.C. § 1912(a).) California law implements the ICWA by requiring notice be sent to the minor's parents, the minor's Indian custodian (if any) and

---

[6] DCFS argues father's appeal should be dismissed because he did not request a reporter's transcript for the January 3, 2013 hearing. We reject this contention because that transcript was eventually added to the appellate record and we have considered it.

7

the minor's tribe whenever the court, a social worker, or probation officer "knows or has reason to know that an Indian child is involved." (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(b)(1).)

Under California law, when there is reason to know an Indian child is involved in a proceeding, the social worker "is required to make further inquiry regarding the possible Indian status of the child, and to do so as soon as practicable, by interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) or Section 224.2, contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member or eligible for membership in and contacting the tribes and any other person that reasonably can be expected to have information regarding the child's membership status or eligibility." (§ 224.3, subd. (c); see Cal. Rules of Court, rule 5.481(a)(4).)

Under the implementing federal regulation, the notice must contain the following information: the name, birth date, and birthplace of the Indian child; the name of the Indian tribe or tribes in which the child is enrolled or may be eligible for enrollment; "[a]ll names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases[,] birthdates[,] places of birth and death[,] tribal enrollment numbers[,] and/or other identifying information"; and a copy of the petition, complaint, or other document initiating the proceeding. (25 C.F.R. § 23.11, subds. (a), (d)(1)-(4).) California law requires similar information in the notices, including "any other identifying information, if known." (§ 224.2, subd. (a)(5)(A)-(D).)

"ICWA notice requirements are strictly construed and must contain enough information to be meaningful." (*In re J.M.* (2012) 206 Cal.App.4th 375, 380 (*J.M.*).) "Thorough compliance with ICWA is required." (*Id.* at p. 381.) We review the juvenile court's findings of proper notice and application of the ICWA for substantial evidence. (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251 (*D.N.*).)

Substantial evidence did not support the juvenile court's finding that the ICWA-030 notices were adequate. For father's relatives, the notices provided almost no information at all. Only two paternal relatives were identified: paternal grandmother Eleonora C., and paternal great-grandmother Eleonora H. Despite interviewing Eleonora C., DCFS included only what appears to be a phone number in the space for her current address, and noted all other information about her was "unknown." For Eleonora H., DCFS included her city of birth and death and her affiliation with the Cherokee tribe. All other paternal relatives were listed as "unknown," even though Eleonora C. named several of them, including paternal great-grandparents Hazel D. and Elly C., and paternal great-great-grandfather Murphy H., whom she believed had Cherokee blood but was not registered.[7] DCFS does not explain why the notices did not include information DCFS either obtained or easily could have obtained during its investigation of T.M.'s Indian heritage. (See *In re Gerardo A.* (2004) 119 Cal.App.4th 988, 995 ["Because the record reveals that the department possessed identifying Indian heritage information and it did not share that information with one or more tribes of whom a dependent child could be a member, we cannot conclude the department's effort to serve notice satisfied ICWA."]; see *In re A.G.* (2012) 204 Cal.App.4th 1390, 1397 [notices inadequate because agency only included information for mother and father, did not interview other available relatives, and did not identify even the known family members in notices]; *In re D.T.* (2003) 113 Cal.App.4th 1449, 1455 [notices inadequate because agency knew but did not include mother's married name, parents' current addresses, names of grandparents, and claimed tribal affiliation].)

---

[7] Normally information for great-great-grandparents need not be included in ICWA notices unless there is some indication the omitted relatives would have provided additional insight into a child's Indian heritage. (See *J.M., supra*, 206 Cal.App.4th at pp. 382-383.) Here, given the dearth of information on father's relatives, DCFS should have included the names and biographical information of the paternal great-great-grandparents to ensure the tribes' investigation was not frustrated by the lack of information.

Further, father indicated on his ICWA-020 form that " [E.V.]" would have more information, but this person was not listed in the notices and there is no indication DCFS made efforts to investigate this person. Although DCFS points out father did not provide further information when given the opportunity to do so, DCFS still had a duty to at least "inquire as to possible Indian ancestry and act on any information it receive[d]," even if it had "no duty to conduct an extensive independent investigation for information." (*In re C.Y.* (2012) 208 Cal.App.4th 34, 41.)

The information in the notices for mother's relatives was more complete, but still deficient. Maternal grandfather Jeffrey J.J. was listed, but only with his current city of residence and his birth day but not year. Maternal great-grandmother Freda W. was listed with her birth day but not year and the year and place of her death. Maternal great-grandfather Lester Jr. F. was listed with his birth date and his date and place of death. His tribe or band affiliation was listed as "unknown," even though maternal grandmother L.F. told DCFS he was half "Blackfoot Cherokee." L.F. also named maternal great-grandmother Lula D., whom she said was also half "Blackfoot Cherokee," but someone else was listed as the maternal great-grandmother. The similar name "Lual Made D." was listed as the maternal great-*great*-grandmother in the "other relative information" section of the notices, and according to the Cherokee Nation's February 11, 2013 letter, "Lual Made D." was a misspelling of "*Lula* Made [D.]" or "*Lula Mae* D." But, that does not clarify whether that name referred to the person identified by L.F. and simply underscores the inadequacy of the information provided in the notices to the tribes.[8]

DCFS argues the failures as to father's relatives were harmless because at the October 25, 2012 hearing the juvenile court found the information about father's ancestry

---

[8] L.F. also said her maternal great-uncle Charles William F. was registered with the tribe, but he was not listed in the notices. But we find no error because he was interviewed and denied anyone in the family had been registered. Although he believed some of his family had Native American heritage, there is no indication he provided more information that DCFS could have investigated.

was "too attenuated and vague to trigger even notices" under the ICWA.  But that was only a preliminary finding because the juvenile court later required notices be sent.  Had this been a final determination, it would have been erroneous.  (See § 224.3, subd. (b)(1) ["reason to know" triggering notice is satisfied when a member of the child's extended family "provides information *suggesting* the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe."  (Italics added.)].)

More generally, we find the errors and omissions in the notices were prejudicial because the notices did not give the tribes an adequate opportunity to investigate T.M.'s Indian heritage.  When tribes actually receive notice, deficiencies in the notices may be deemed harmless if the child would not have been found to be an Indian child even if proper notice had been given.  (*D.N., supra*, 218 Cal.App.4th at p. 1251.)  Although the tribes found T.M. was not an Indian child, they did so upon incomplete information provided by DCFS.  Indeed, the Cherokee Nation requested and received further information, but it was still "unable to make a determination with the limited documentation" it received, so it closed the inquiry due to "inadequate documentation." Thus, we cannot conclude T.M. would not have been found to be an Indian child if the tribes had been given more complete information.  (See *In re Cheyanne F*. (2008) 164 Cal.App.4th 571, 576 ["Notice given under ICWA must . . . contain enough information to permit the tribe to conduct a meaningful review of its records to determine the child's eligibility for membership."].)

## DISPOSITION

The order terminating parental rights is conditionally reversed, and the matter is remanded to the juvenile court with directions to order compliance with the notice provisions of the ICWA in accordance with this opinion.  If, after proper inquiry and notice, no response is received from a tribe indicating T.M. is an Indian child, all previous findings and orders shall be reinstated.  If a tribe determines T.M. is an Indian child, the juvenile court is ordered to conduct a new section 366.26 hearing in conformity with all provisions of the ICWA.

11

In all other respects, the order is affirmed.

FLIER, J.

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.