Filed 3/8/22  In re H.D. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re H. D., a Person Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. C.D., Defendant and Appellant. | G060659 (Super. Ct. No. 20DP0631) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Mary Kreber-Varipapa, Judge.  Conditionally reversed and remanded with directions.

Lelah S. Fisher, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minor.

\*          \*          \*

In this juvenile dependency proceeding involving one minor (the child), C. D. (mother) appeals from an order terminating her parental rights to the child pursuant to Welfare and Institutions Code section 366.26,[1] placing the child for adoption and approving a permanent plan of adoption by the maternal grandmother. Mother contends respondent Orange County Social Services Agency (SSA) and the juvenile court failed to comply with their duty of inquiry under the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) and related California law (§ 224 et seq.), meaning there is insufficient evidence to support the court's finding ICWA does not apply. Because the record is silent as to compliance with certain aspects of the ICWA inquiry duty, we agree. We further conclude the error is prejudicial under the circumstances. Accordingly, we conditionally reverse the order terminating parental rights and remand the matter to allow SSA and the juvenile court to correct the error and take all other necessary actions to comply with ICWA related law.

FACTS

SSA contacted mother after learning she had a history of depression and drug use, including crack cocaine and marijuana, and she was purportedly still smoking marijuana while exclusively breastfeeding her then two-week-old child. Further information received by SSA included the following: mother used crack cocaine six weeks into her pregnancy; mother made statements about "being high" while caring for

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

the child and the child appeared lethargic; mother had a history of prostitution and her pimp had come to see her at her mother's (i.e., the child's maternal grandmother) residence where she was living with the child at the time.

After interviewing mother, the maternal grandmother, mother's minor sister and mother's friend, reviewing a police report and further investigating matters, SSA sought a protective custody warrant concerning the child. It believed the child's physical environment posed a threat to her health and safety and temporary removal of her from mother's physical custody was the only means to protect her. The juvenile court granted the warrant.

Eventually, following further interviews, assessments, evaluations, court hearings and orders, and opportunities for mother to receive assistance and services, the juvenile court held a section 366.26 hearing to consider whether the child was adoptable and whether mother's parental rights should be terminated. It ultimately found her adoptable and terminated mother's parental rights.

Mother timely appealed. Because of the limited nature of her appeal, the following provides further detail concerning ICWA related facts and proceedings in this case.

*ICWA Related Facts*

When a social worker initially spoke with mother, she stated she had Native American heritage, but it was "not documented." Not long thereafter, in conjunction with her first court appearance, mother completed a "Parental Notification of Indian Status" form on which she indicated she "may have Indian ancestry." She did not list any tribe or band affiliation in the space provided. Apprised of this information, the juvenile court ordered SSA to "do the necessary ICWA due diligence."

3

About one month later, in its section 300 petition, SSA noted the child had "no known Indian ancestry," although an accompanying detention report acknowledged mother's prior statements about the possibility of such ancestry.

At the detention hearing, mother's counsel stated mother may have Native American ancestry with the Blackfoot tribe. A "Parental Notification of Indian Status" filed by mother that same day stated she was or may be a member of the Blackfoot tribe, or eligible for membership therein. Based on those representations, the juvenile court found ICWA may apply and ordered SSA to do the necessary due diligence.

Mother provided slightly more information during her subsequent interview with an ICWA social worker. Although she claimed to not know much about her family's Native American ancestry, she noted its Blackfeet tribe ancestry was through her mother — the child's maternal grandmother. She relayed that neither her nor the maternal grandmother were enrolled members of the tribe, but said the maternal grandmother may be able to provide more detail concerning the family's ancestry. Mother was not aware of any other relatives with additional information.

The maternal grandmother initially purported to "not know anything about" the family's Native American ancestry, but in a follow-up conversation with the ICWA social worker she indicated she was told there was Blackfeet ancestry through her mother (i.e., the child's maternal great-grandmother). She could not provide any related proof or paperwork, and she declined to give contact information for the maternal great-grandmother, whom she stated was not an enrolled member of the tribe. Also, like mother, she could not identify any other relatives who might have additional information.

4

The social worker tried contacting the maternal great-grandmother by using a telephone number obtained from papers filed in an earlier, separate juvenile dependency proceeding in which mother was a minor. She reached a recorded message indicating the number had been disconnected or was no longer in service.

In a status report dated approximately seven months later, SSA conveyed to the court the information provided by mother and the maternal grandmother, as well as the attempts to reach the maternal great-grandmother. SSA also advised it asked for and was awaiting an update from its ICWA unit. An addendum to the report filed roughly six weeks later stated SSA had no updates to provide related to the proceedings, generally.

SSA filed one more report prior to the hearing concerning termination of parental rights. It reiterated all previously obtained ICWA related information and stated SSA's ICWA unit did not obtain any new information concerning the child. Based on those representations "and the ongoing efforts of the social worker," the court found ICWA did not apply.

DISCUSSION

Mother's claim of error is narrow. She contends the juvenile court's ICWA finding is erroneous because SSA and the court did not fulfill their further inquiry duties imposed by section 224.2. From her perspective, such lack of compliance invalidates the termination of her parental rights and the matter must be remanded for full ICWA compliance prior to any further action to end her parental rights. SSA argues it satisfied all ICWA related duties triggered by the specific circumstances in this case. Alternatively, it argues any error was harmless, and even if this court finds prejudicial error, any reversal and remand should be limited in scope. We agree SSA and the juvenile court failed to fulfill the applicable further inquiry duties under the circumstances, requiring a limited conditional reversal of the termination order.

5

*Standard of Review*

"'[W]here the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied.' [Citations.] However, 'we review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order. [Citations.] We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' [Citations.] The appellant — in this case, Mother — has the burden to show the evidence was not sufficient to support the ICWA finding. [Citation.]" (*In re D. F.* (2020) 55 Cal.App.5th 558, 565 (*D.F.*).)

*ICWA Inquiry and Notice Requirements*

"ICWA reflects 'a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards that a state court . . . must follow before removing an Indian child from his or her family.' [Citation.] Both ICWA and the Welfare and Institutions Code define an 'Indian child' as 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.'" (*D.F., supra*, 55 Cal.App.5th at p. 565, fn. omitted.) Due to historic noncompliance with ICWA, the state Legislature incorporated ICWA's requirements into California statutory law in 2006. (*Id*. at p. 565, fn. 4.)

The statutory scheme imposes an affirmative and continuing duty on both the juvenile court and SSA to inquire whether a child who is the subject of a section 300 petition "is or may be an Indian child." (§ 224.2, subd. (a).) The duty is comprised of three separate parts, each of which is sequentially triggered by different case specific

6

factual circumstances. (*In re J.S.* (2021) 62 Cal.App.5th 678, 688; *D.F., supra*, 55 Cal.App.5th at p. 566.)

First is the initial duty to inquire whether a child is an Indian child. This duty arises at the outset, when SSA receives a report of child abuse or neglect which initiates an investigation. SSA must ask the child, parents, legal guardian, extended family members and others with an interest in the child whether the child is, or may be, an Indian child. (§ 224.2, subd. (b).) The juvenile court must make a similar inquiry. At each parent's first court appearance, it must: (1) ask whether the parent "knows or has reason to know the child is an Indian child" (*id*., subd. (c)); (2) order each one to complete Judicial Council form ICWA-020, Parental Notification of Indian Status (Cal. Rules of Court, rule 5.481(a)(2)(C)); and (3) direct the parties to inform the court if they thereafter learn information which provides reason to know the child is an Indian child (§ 224.2, subd. (c)).

Next, a duty of further inquiry arises when SSA or the juvenile court has "reason to believe" the proceedings involve an Indian child. As recently clarified by the Legislature, a "reason to believe" exists when the court or SSA "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) Such suggestion arises from, inter alia, "information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in [section 224.2, subdivision (d)]." (*Id*., subd. (e)(1).)

The further inquiry required includes, without limitation, the following: (1) interviewing the parents and extended family members to gather specified information (§ 224.2, subd. (e)(2)(A)); (2) "[c]ontacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in" (*id*., subd. (e)(2)(B)); and (3) contacting the tribe or tribes reasonably expected to

7

have information to determine the child's membership status or eligibility (*id.*, subd. (e)(2)(C)).

The final duty component arises when the court or SSA has "reason to know" the child is an Indian child. (*D.F., supra*, 55 Cal.App.5th at p. 567.) A "reason to know" exists if any of the following circumstances is present: "(1) A person having an interest in the child . . . informs the court that the child is an Indian child; [¶] (2) The residence . . . of the child [or] the child's parents . . . is on a reservation or in an Alaskan Native village; [¶] (3) Any participant in the proceeding . . . informs the court that it has discovered information indicating that the child is an Indian child; [¶] (4) The child . . . gives the court reason to know he or she is an Indian child; [¶] (5) The court is informed that the child is or has been a ward of a tribal court; or [¶] (6) The court is informed that either parent or the child possess[es] an identification card indicating membership or citizenship in an Indian tribe." (§ 224.2, subd. (d).)

"Once [SSA] or the juvenile court has a reason to know an Indian child is involved, notice pursuant to ICWA must be sent to the pertinent tribe(s) via registered or certified mail. . . . [¶] It is this 'notice requirement, which . . . enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.'" (*D.F., supra*, 55 Cal.App.5th at p. 568, italics omitted.)

*Analysis*

The parties do not dispute SSA and the juvenile court engaged in the requisite initial inquiry, so we begin our analysis at the further inquiry stage. Mother asserts SSA and the juvenile court had reason to believe she and/or the child may be eligible for membership in the Blackfeet tribe, meaning SSA needed to perform a further inquiry. She argues the record does not show SSA fulfilled that duty and, accordingly,

8

the court's finding of ICWA inapplicability is not supported by substantial evidence. We agree.

Mother's and the maternal grandmother's statements about Indian ancestry through the identified maternal great-grandmother were sufficient to suggest possible eligibility for membership in the Blackfeet tribe — i.e., they gave rise to a "reason to believe." (See § 224.2, subd. (e)(1); *In re T.G.* (2020) 58 Cal.App.5th 275, 292 (*T.G.*); *In re A.M.* (2020) 47 Cal.App.5th 303, 322 (*A.M.*).)

SSA appears to agree, instead arguing the "'reason to believe'" was later "rebutted and rendered obsolete" because Mother and the maternal grandmother stated they were not members of the tribe and the information they provided did not suggest a family member met the criteria for Blackfeet tribe membership. In conjunction with this argument, SSA asks we take judicial notice of excerpts of the Blackfeet tribe constitution and by-laws. We decline to do so because the excerpts are not relevant to an issue within our jurisdiction. The tribe has the sole authority to determine whether Mother, the child and/or any other family member is eligible for tribal membership. (*T.G., supra*, 58 Cal.App.5th at p. 294.) And the statements indicating no known membership in the Blackfeet tribe did not render meaningless those otherwise suggesting a possible eligibility for membership in it. (See *id*. at p. 295 ["General information from the family about its ancestry frequently provides the only available basis to believe an Indian child may be involved"].)

Turning to the required further inquiry, as detailed above, section 224.2 contains a nonexhaustive list of steps that must be taken. Among them is contacting the Bureau of Indian Affairs (BIA) and the State Department of Social Services (SDSS) for certain assistance, as well as contacting any tribes with potential information regarding the child's eligibility. (§ 224.2, subd. (e)(2)(B)-(C).)

9

Mother first faults SSA for failing to continue to attempt to contact the maternal great-grandmother who both mother and the maternal grandmother identified as likely having information about the family's Indian ancestry. However, assuming arguendo it was obligated to try to contact her in the first instance, SSA fulfilled its obligation. Mother did not have contact information for the maternal great-grandmother and the maternal grandmother refused to provide it. But SSA did not stop there. It used contact information obtained from a file for a dependency case involving mother when she was a child to try to reach the maternal great-grandmother. Although SSA ultimately did not reach her because the phone number was no longer valid, its efforts were reasonable and adequate under the circumstances. (See *A.M., supra*, 47 Cal.App.5th at p. 323 [ICWA does not obligate court or social services "'to cast about for investigative leads'"]; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 787 ["the agency must pursue all reasonable investigative leads"].)

As for contact with agencies and tribes, there is no evidence in the record SSA communicated with BIA, SDSS or the Blackfeet tribe. SSA argues it was not obligated to submit evidence of its further inquiry because its compliance may be presumed under Evidence Code section 664. But the presumption an official duty has been regularly performed does not apply under the circumstances. Unlike other ICWA cases in which courts have applied it (see, e.g., *In re S.B.* (2009) 174 Cal.App.4th 808, 812-813), SSA did not below, and does not on appeal, purport to have communicated with any of the required agencies or the Blackfeet tribe, and there is no evidence of a response to such a communication. Allowing reliance on the presumption under such circumstances would render SSA's supposed inaction unchallengeable and effectively preclude judicial review of ICWA compliance. (See *In re K.R.* (2018) 20 Cal.App.5th 701, 709 [rejecting reliance on Evidence Code section 664 presumption when SSA reports omitted any discussion of efforts to locate and interview family members with relevant information as required by ICWA]; *In re Jeffrey A.* (2002) 103 Cal.App.4th

10

1103, 1108 [rejecting reliance on Evidence Code section 664 presumption when nothing in the record indicated the required ICWA notice was sent].)

"In the absence of an appellate record affirmatively showing the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements, we will not, as a general rule, conclude that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply. Instead, as a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible." (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.) This is consistent with ICWA's mandate that as a prerequisite to concluding ICWA does not apply, a court must first find (1) "proper and adequate further inquiry and due diligence . . . [has] been conducted," and (2) "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2); see *In re Jennifer A.* (2002) 103 Cal.App.4th 692, 703 ["Without knowing whether proper notice was given, and whether any response was received from the tribes, the juvenile court could not knowingly determine whether the remaining provisions of the ICWA applied"].)

SSA claims any error was harmless because mother has not shown a reasonable probability of a more favorable outcome absent the error. So it argues, the following facts preclude a finding that full compliance with inquiry duties is reasonably probable to give rise to a "reason to know" the child is an Indian child: (1) mother does not claim on appeal she or any family member "'has any new or pertinent information regarding Indian ancestry' or eligibility for tribal membership;" (2) mother and the maternal grandmother unequivocally denied tribal membership; and (3) no information suggests the child or any relative meets the criteria for membership in the Blackfeet tribe.

Unlike *In re Charles W.* (2021) 66 Cal.App.5th 483, 492, cited by SSA, this is not a case in which the alleged deficiency is failure to inquire of a parent or relative and the complaining parent fails to make any showing as to the new information that would be discovered if the proper inquiry were made. (See *In re Rebecca R.* (2006) 143

11

Cal.App.4th 1426, 1431 [harmless error where father complained SSA did not ask him whether child had Indian heritage, but at no time did father represent or make an offer of proof he had information to share if asked]; *In re N.E.* (2008) 160 Cal.App.4th 766, 769 [failure to further inquire of father is harmless error when there is no suggestion in record he has Indian ancestry].)

Similarly, this is not a case in which there is evidence of the required communication and the disputed issue is an error or omission in it. (See, e.g., *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 784 [error in mother's birth year in ICWA notice sent to tribe subject to harmless error analysis].)

The seeming problem here is a complete failure to communicate with BIA, SDSS and the Indian tribe mentioned by mother and the maternal grandmother. While it may be such an oversight could be deemed harmless in a situation where evidence conclusively demonstrates no Indian ancestry (see *In re D.N.* (2013) 218 Cal.App.4th 1246, 1251 ["Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child"]), this is not such a case.[2]

The ICWA inquiry obligation in each case is an ongoing one. As new information arises, SSA and the juvenile court has an obligation to determine whether and to what extent it may impact any prior ICWA analyses or determinations. It is not

---

[2] SSA requests we take judicial notice of an ICWA related tribal communication filed nearly 15 years ago in a dependency case involving mother when she was a child, as well as an ICWA related court minute order from the same proceeding. Neither document was presented to the juvenile court in this case. Even assuming, without deciding, the documents are a type of which we may take judicial notice, we decline to do so as they are not relevant to the matters before us. There is no indication what information was provided to and considered by the juvenile court in the prior case. Further, neither suggests all information brought to light during the proceedings in this case (e.g. the child's maternal great-grandmother's maiden name) was known and factored into the ICWA process in the other case.

our role to speculate how tribes, the BIA or others would respond if presently provided with all known information. (See *In re J.N.* (2021) 138 Cal.App.4th 450, 461 [refusing to speculate about mother's potential response to initial inquiry by SSA that it failed to conduct].)

"'Noncompliance with ICWA has been a continuing problem in juvenile dependency proceedings conducted in this state, and, by not adhering to this legal requirement, we do a disservice to those vulnerable minors whose welfare we are statutorily mandated to protect.'" (*In re A.G.* (2012) 204 Cal.App.4th 1390, 1401.) Because nothing in the record shows SSA completed the minimum further inquiry required by section 224.2, we must remand the matter to the juvenile court. On remand it must direct SSA to engage in the proper further inquiry, notify the court of the outcome and otherwise comply with ICWA based thereon, including sending formal ICWA notice if information acquired provides a "reason to know." Thereafter, the court must determine, on the record, whether the ICWA inquiry and notice requirements, if applicable, have been satisfied and whether evidence establishes the child is an Indian child. If the court determines ICWA does not apply, the court's order terminating parental rights shall be immediately reinstated. If the requisite inquiry results in notification from a tribe or BIA that the child is an Indian child, the court must conduct a new section 366.26 permanent plan selection hearing, as well as all further proceedings, in compliance with ICWA and related California law. We recognize this process will somewhat delay a stable and permanent plan for the child, but the record before us unfortunately leaves us no choice.

## DISPOSITION

The section 366.26 order is conditionally reversed. The matter is remanded to the juvenile court with directions to order SSA to contact BIA, SDSS and the Blackfeet tribe as prescribed by statute, file documentation of its efforts and otherwise comply with

13

ICWA based on any further information received.  If the court, thereafter, concludes ICWA does not apply, the section 366.26 order shall be immediately reinstated.  If a tribe or BIA concludes the child is an Indian child, the juvenile court shall conduct a new section 366.26 permanent plan selection hearing, and all further proceedings, in accordance with ICWA and related California law.


                              MARKS, J.*

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14