Filed 6/9/22  In re P.G. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re P.G, et al., Persons Coming Under the Juvenile Court Law. | B314660 consolidated with B314674 <br><br> (Los Angeles County Super. Ct. Nos. CK63906, CK63906H, CK63906I, CK63906K, CK63906M) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>        Plaintiff and Respondent, <br><br>        v. <br><br> P.G., <br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Julie Fox Blackshaw and Debra Losnick, Judges. Reversed and remanded with instructions.

Linda S. Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, Aileen Wong, Deputy County Counsel, for Plaintiff and Respondent.

_____

During dependency proceedings involving father P.G.'s children P., R., I., and C., father advised the court and the Los Angeles County Department of Children and Family Services (DCFS) that he was or may be a member of a non-federally recognized Indian tribe. Although the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) applies only to federally recognized tribes, DCFS sent the tribe notice of the proceedings prior to the permanency planning hearing. The tribe responded with a letter stating the children may be eligible for enrollment, explaining the enrollment process, and expressing interest in providing the children with cultural resources and services. The letter also stated that the tribe participates in dependency cases involving tribal children and requested further information about the case, including contact information for DCFS social workers and counsel. DCFS included the letter in the case file and acknowledged it in subsequent reports, but there is no indication DCFS or the court further engaged the tribe before the court selected adoption as the children's permanent plans and terminated father's parental rights to P. and R.

Father now contends the court erred by failing to determine whether Welfare and Institutions Code section 306.6[1] applied to the case. That statute gives the court discretion to permit a non-federally recognized tribe to participate in dependency proceedings upon request of the tribe if certain conditions are met. Section 306.6, subdivision (e) provides that the court "shall, on a case-by-case basis, make a determination if this section is applicable and may request information from the tribe . . . for the purposes of making this determination." We agree with father that the court should have considered the applicability of section 306.6 here. The tribe's letter was tantamount to a request to participate in the proceedings, and thus required the court to make further inquiry under section 306.6. We accordingly conditionally reverse the court's orders and remand for the limited purpose of conducting further inquiry pursuant to section 306.6.

## BACKGROUND

P., R., I, and C. are the four youngest of father's children in common with mother C.Y. These four children and two of their older siblings, all of whom were living with father, came to the attention of DCFS in April 2017, after one of the older siblings disclosed self-harm and suicidal ideation.[2] DCFS detained the children and, after investigating, filed a section 300 petition alleging negligence and failure to protect as to all six children under section 300, subdivision (b)(1), emotional abuse of the

---

[1]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2]    Father does not challenge any of the court's orders concerning the two older siblings.

3

disclosing sibling under section 300, subdivision (c), and sibling abuse of all six children under section 300, subdivision (j).[3]

The family had an extensive previous history with DCFS. In previous proceedings, father stated that he had Native American heritage with the Santa Ynez Band of Chumash Indians, a federally recognized tribe. In 2010, the Santa Ynez Band of Chumash Indians intervened in proceedings involving the four children at issue here. The tribe concluded at that time that P. and R. were tribal children. It made no determination as to C., as it did not have his birth certificate, and concluded that I. was not a tribal child because father was not named on his birth certificate. By July 2014, however, a social worker with the Santa Ynez Band of Chumash Indians notified DCFS that the tribe no longer wished to participate in proceedings involving the family. During DCFS's investigation into the instant allegations, a social worker who worked on a previous matter involving the family advised the current social worker that the Santa Ynez Band of Chumash Indians "does not want anything to do with" father.

Father identified the "Chumash" tribe on the ICWA-020 form he completed in the instant case on May 10, 2017. He also listed the "Tataavian" tribe, apparently referring to the Fernandeño Tataviam Band of Mission Indians, a California tribe that is not federally recognized. DCFS reported that it mailed ICWA notices to the Santa Ynez Band of Chumash Indians on July 18, 2017. After sustaining the allegations in the petition and taking jurisdiction over the children on August 8, 2017, the

---

[3] The facts underlying the dependency proceedings are not relevant to the ICWA issues presented in this appeal. We accordingly do not discuss them further.

4

court continued disposition to give DCFS an opportunity to obtain an "expert letter" from the Santa Ynez Band of Chumash Indians. Although no expert letter is in the record, on January 29, 2018 DCFS filed a report stating that a social worker spoke to a representative of the Santa Ynez Band of Chumash Indians on January 22, 2018. The representative stated that the tribe would not be intervening in the proceedings because the family no longer qualified for tribal membership. DCFS requested that the tribe provide something to that effect in writing; the representative said she had sent a letter and would check the tribe's archives for a copy.

At the February 8, 2018 disposition hearing, the court stated, "The Chumash tribe has decided at this time this is not an ICWA case. These children are not Indian children." The court declared the children dependents of the court. P., R., I., and C. were placed with father, and the court ordered family maintenance services. P., R., I., and C. were later detained from father and placed in foster care after DCFS received another referral involving the family in June 2018; DCFS filed a section 342 petition in July 2018. At the July 5, 2018 detention hearing, the court found that ICWA did not apply and did not order notice to any tribes. The court made the same finding at the September 19, 2018 adjudication hearing. It again found the case was not an ICWA case at a June 3, 2019 review hearing; the court terminated reunification services at that time and set the matter for a section 366.26 hearing.

Despite these repeated findings, on October 20, 2020 DCFS sent ICWA notices to the Santa Ynez Band of Chumash Indians and, for the first time, to the Fernandeño Tataviam Band of Mission Indians. The Santa Ynez Band of Chumash Indians

5

declined the right to intervene in P.'s and R.'s cases and further responded that I. and C. were not enrolled tribal members and were not eligible for enrollment.

In a single letter dated January 25, 2021, the Fernandeño Tataviam Band of Mission Indians stated that none of children was "presently an enrolled member of the Tribe, however Minor may be eligible for enrollment." The letter continued:

"If the child is not enrolled, the application process for citizenship begins by supplying a copy of a state-issued birth certificate and social security card, along with the Minor Application for Citizenship available on the Tribe's website at [url].

"The Tribe is a California Native American Indian government in the [*sic*] northern Los Angeles County recognized by the State of California Native American Heritage Commission. The Tribe participates in ICWA proceedings involving Fernadeño Tataviam children to ensure cultural well-being.

"The Tribe acknowledges Indian children in the custody of DCFS who may have experienced some devastation at home; the Tribe maintains that the tribal relationship between the child and our community is vital for cultural valance [*sic*] and preservation of the children's heritage and future role within the community. Placement of the minor is crucial for the child's heritage and cultural growth. The Tribe would like to be informed of the status of the minor and contacts of the foster/legal guardian to ensure cultural services.

"Accordingly, the minor is eligible to participate in the Tribe's cultural activities as well as other cultural services, workshops, traditional games & sports, gatherings and ceremonies. We would like to provide resources and references

where the minor may be involved with our collective community.

"Please remit the following information: County Counsel name, email and phone number; current CSW name, email, and phone number.

"Should you have any further questions please contact the Tribal Citizenship Office at [phone and email contact information]."

In section 366.26 reports filed on April 2, 2021 (for I. and C.) and June 30, 2021 (for all four children), DCFS reported the following: "On 09/19/2018, the Court found that ICWA does not apply. [¶] An ICWA form 030 was submitted to the Chumash Tribe and the Tatavian [sic] Tribes. The Tatavian [sic] Tribe responded by letter stating the children [P., R., I., and C.] are not presently enrolled members of the tribe, however may be eligible for enrollment. [¶] On 3/3/21, DI Woodson-Jarrett received a return phone call from Carmen Romero of the Santa Ynez Band of Chumash Tribe. She stated that she is familiar with [father]. She stated at one time they were eligible to enroll in the tribe, but the tribe has changed its eligibility requirements and the family no longer meets the requirements to be enrolled with the tribe. The Chumash tribe also sent a letter that they do not wish to intervene in this matter. Court is referred to the attachment."

On July 27, 2021, the court held a permanency planning review hearing and ordered adoption as the permanent plan for P., R., I., and C. No one mentioned the letter from the Fernandeño Tataviam Band of Mission Indians.

On August 10, 2021, the court held a section 366.26 hearing for P. and R., who were placed in the same home; the hearing for I. and C., who were placed together in a different home, was continued to October 26, 2021. As at the July 27, 2021 hearing,

7

neither the court nor any party mentioned the letter from the Fernandeño Tataviam Band of Mission Indians. The court found that ICWA did not apply and terminated father's parental rights to P. and R.

Father filed notices of appeal from the orders terminating his parental rights to P. and R. on August 10, 2021. On the same day, father also filed separate notices of appeal, ostensibly from orders terminating his parental rights to I. and C., though no such orders had issued. As father requests in his opening brief, we liberally construe the latter notices of appeal as being from the July 27, 2021 permanency planning orders concerning I. and C.; DCFS has made no claim of prejudice. (See *In re Joshua S.* (2007) 41 Cal.4th 261, 272; see also § 395, subd. (a)(1); § 366.26, subd. (*l*)(1).)

## DISCUSSION

The ICWA is a federal law that establishes "minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.) "When applicable, ICWA imposes specific requirements on child custody proceedings in state court. Among other things, when 'the court knows or has reason to know that an Indian child is involved,' the party seeking to remove the Indian child from the custody of its parent or Indian custodian, or to terminate parental rights, must 'notify the parent or Indian custodian and the Indian child's tribe . . . of the pending proceedings and of their right of intervention.' (25 U.S.C. § 1912(a).)" (*In re Abbigail A.* (2016) 1 Cal.5th 83, 90-

8

91.) Once notified, an Indian tribe "may intervene 'at any point in the proceeding.'" (*Id.* at p. 91.)

"In any given case, ICWA applies or not depending on whether the child who is the subject of the custody proceeding in question is an Indian child." (*In re Abbigail A., supra*, 1 Cal.5th at p. 90.) "Congress defined 'Indian child' for these purposes to mean 'any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C, § 1903(4).)" (*In re Abbigail, supra*, 1 Cal.5th at p. 90.) Only federally recognized Indian children and tribes are entitled to the protections of ICWA; "non-federally recognized tribes . . . have no rights under ICWA." (*Id.* at p. 94.) This includes the rights to notice and intervention.

However, the Legislature has enacted a statute that gives the juvenile court discretion to allow non-federally recognized tribes to participate in cases involving children who would be Indian children but for the unrecognized status of their tribe. (*In re Abbigail A., supra*, 1 Cal.5th at p. 94.) That statute, section 306.6, provides:

"(a) In a dependency proceeding involving a child who would otherwise be an Indian child, based on the definition contained in paragraph (4) of Section 1903 of the federal Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), but is not an Indian child based on the status of the child's tribe, as defined in paragraph (8) of section 1903 of the federal Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), the court may permit the tribe from which the child is descended to participate in the proceeding upon request of the tribe.

9

"(b) If the court permits a tribe to participate in a proceeding, the tribe may do all of the following, upon consent of the court:  [¶] (1) Be present at the hearing. [¶] (2) Address the court. [¶] (3) Request and receive notice of hearings. [¶] (4) Request to examine court documents relating to the proceeding. [¶] (5) Present information to the court that is relevant to the proceeding. [¶] (6) Submit written reports and recommendations to the court. [¶] (7) Perform other duties and responsibilities as requested or approved by the court. "(c) If more than one tribe requests to participate in a proceeding under subdivision (a), the court may limit participation to the tribe with which the child has the most significant contacts, as determined in accordance with paragraph (2) of subdivision (d) of Section 170 of the Family Code.

"(d) This section is intended to assist the court in making decisions that are in the best interest of the child by permitting a tribe in the circumstances set out in subdivision (a) to inform the court and parties to the proceeding about placement options for the child within the child's extended family or the tribal community, services and programs available to the child and the child's parents as Indians, and other unique interests the child or the child's parents may have as Indians.  This section shall not be construed to make the Indian Child Welfare Act (25 U.S.C. Sec. 1901 et seq.), or any state law implementing the Indian Child Welfare Act, applicable to the proceedings, or to limit the court's discretion to permit other interested persons to participate in these or any other proceedings.

"(e) The court shall, on a case-by-case basis, make a determination if this section is applicable and may request information from the tribe, or the entity claiming to be a tribe,

10

from which the child is descended for the purposes of making this determination, if the child would otherwise be an Indian child pursuant to subdivision (a)."

Father contends the court erred by not making the determination required by section 306.6, subdivision (e) after receiving the January 25, 2021 letter from the Fernandeño Tataviam Band of Mission Indians. He argues that the letter was a "request" by the tribe to intervene pursuant to section 306.6, subdivision (a), and was therefore "sufficient to trigger subdivision (e)." DCFS agrees "the juvenile court need only make a determination if section 306.6 is applicable if a tribe requests to participate in the dependency proceedings," but disputes that the letter constituted such a request. Because resolution of this issue requires interpretation of section 306.6, we apply a de novo standard of review. (*In re E.F.* (2021) 11 Cal.5th 320, 326.)

By its plain terms, section 306.6 gives the court discretion to allow a non-federally recognized tribe to "participate in the proceeding upon request of the tribe." (§ 306.6, subd. (a); see also *In re Abbigail A.*, *supra*, 1 Cal.5th at p. 94.) However, section 306.6, subdivision (e) uses the word "shall," which is generally construed as mandatory, particularly where, as here, both "shall" and "may" are used in the same statute. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 626.) Reading section 306.6 as a whole, and in light of its purpose as set forth in subdivision (d), we agree with the parties that the mandatory language used in subdivision (e) requires the court to consider whether the statute is applicable when a non-federally recognized tribe makes a request to participate in dependency proceedings.

The statute does not define "request," and the Fernandeño Tataviam Band of Mission Indians did not use the term "request"

11

in its letter.  However, the tribe stated in its letter that it "participates in ICWA cases involving Fernandeño Tataviam children to ensure cultural well-being," "would like to be informed of the status of the minor and contacts of the foster/legal guardian to ensure cultural services," and "would like to provide resources and references where the minor may be involved with our collective community."  These statements unambiguously indicate a desire by the tribe to participate in the proceedings, which involved children it believed "may be eligible for membership."  The court may have been unaware of these statements; the letter was mixed in with notices of hearing and proofs of service.  Moreover, DCFS did not fully summarize the letter in the section 366.26 report, nor did it bring the letter to the court's attention during any hearings held after its receipt.  Nevertheless, the duty imposed by section 306.6, subdivision (e) is a mandatory one; we therefore conclude error occurred.

When a non-federally recognized tribe expresses an unambiguous interest in participating in dependency proceedings involving children who are or may be tribal members, section 306.6, subdivision (e) requires the court to "make a determination if [section 306.6] is applicable."  (§ 306.6, subd. (e).)  Where, as here, the children's membership eligibility is pending, or if other circumstances warrant, the court "may request information from the tribe" to assist it in determining whether to apply section 306.6.  (*Ibid.*)  We emphasize that the court retains discretion to determine whether and to what extent the tribe may participate; we hold only that it must make the threshold determination of whether section 306.6 may apply.  This holding is intended to advance the purpose of section 306.6, which is to "assist the court

12

in making decisions that are in the best interest of the child" (§ 306.6, subd. (d)); the child's interests remain paramount.

Because the court did not consider whether to apply section 306.6, we conditionally reverse the challenged orders and remand for the limited purpose of determining whether section 306.6 applies and conducting any further proceedings necessary to comply with the provisions of the statute.

To the extent father also contends the court did not comply with ICWA notice requirements,[4] we find any error harmless. The requirements did not apply to the Fernandeño Tataviam Band of Mission Indians, which is not a federally recognized tribe. The requirements did apply to the Santa Ynez Band of Chumash Indians, but "[d]eficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child." (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.) Here, the Santa Ynez Band of Chumash Indians expressly declined to participate in the proceedings involving P. and R., and notified the court that I. and C. were not tribal members or eligible for membership. Any error accordingly was harmless.

## DISPOSITION

The July 27, 2021 orders concerning I. and C. and the August 10, 2021 orders terminating father's parental rights to P. and R. are conditionally reversed. The matter is remanded for the limited purpose of determining whether section 306.6 applies

---

[4] Father does not caption this argument under a separate argument heading, as required by California Rules of Court, rule 8.204(a)(1)(B).

13

and conducting further proceedings necessary to comply with the provisions of the statute.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

WILLHITE, ACTING P.J.

CURREY, J.

14