Filed 12/20/24  In re E.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re E.C., a Person Coming Under the Juvenile Court Law. | C100984 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. JV20220058) |
| Plaintiff and Respondent, | |
| v. | |
| P.B., | |
| Defendant and Appellant. | |

P.B. (father) appeals from an order terminating his parental rights with regard to E.C. (minor) under Welfare and Institutions Code section 366.26.[1]  Father contends the

---

[1] The mother appealed separately.  Her appeal was dismissed on September 10, 2024, pursuant to *In re Phoenix H*. (2009) 47 Cal.4th 835.  Undesignated statutory references are to the Welfare and Institutions Code.

1

Yolo County Health and Human Services Agency (Agency) failed to perform an adequate inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

We conclude the Agency and the juvenile court made all necessary ICWA inquiries and provided sufficient ICWA notice. Accordingly, we will affirm the juvenile court's orders.

BACKGROUND

The minor, born in April 2022, was detained by the Agency only days after she was born. At the time of her detention, father reported ancestry with the "Blackfoot tribe from Southern California"; he was not a registered member, but he believed other family members were. Father agreed to provide the Agency any relevant information regarding his ancestry.

In May 2022, the Agency reported sending an e-mail notice of the petition to the Cherokee Nation, the United Keetoowah Band of Cherokee Indians, the Eastern Band of Cherokee Indians, and the Blackfoot Tribe of the Blackfoot Indian Reservation of Montana. The Agency reported at the time that it had not received a response.

On June 13, 2022, the juvenile court asked both parents if they had any new information about possible Indian heritage. The parents indicated they did not. In its six-month review report, the Agency stated it asked father for additional information about his relatives and their Indian ancestry, but he did not provide any new information.

At the six-month review hearing in January 2023, the juvenile court asked father about his Indian heritage, particularly about any connection to the Choctaw tribe. Father said he was an "aboriginal native" with "intertribal relations and background." He said on his grandmother's side he had Choctaw and some Blackfoot heritage, an established full-blood great-grandfather of the Muscogee Nation, and additional records. The juvenile court directed father to provide all relevant ICWA information to the social worker, including the name and birthdate of his grandfather.

2

In May 2023, the Agency reported that the social worker spoke with father regarding his Indian ancestry. Father said he had Indian ancestry through both his mother and his father, that his maternal great-grandfather was full-blood Choctaw Indian, and that his paternal grandmother lived on the Muscogee Creek Land in Oklahoma. Father provided the social worker with a family tree.

On June 27, 2023, father texted the social worker that he had additional paperwork to support his Indian ancestry. The social worker gave father her e-mail address and asked that he send her all the paperwork. Father gave the social worker his mother's name, an additional family name from San Bernadino, California (Opal Murdock), and photos of his family tree.

The following day, the social worker spoke to father on the telephone. They discussed father's family tree along with the ICWA-030 form prepared by the social worker. Father confirmed the information the social worker included in the form but agreed to review the form and provide the social worker with any additional information. The social worker later texted father and asked if anyone in his family attended an Indian school or received medical treatment at an Indian health clinic. The social worker also needed more information about the grandmother that was born on tribal land.

On June 29, 2023, father sent the social worker a better picture of his family tree. The family tree showed that Charley Harris was born in 1876 and was the minor's great-great-great-grandfather. Charley's son was Clarence Harris, the minor's great-great-grandfather and the father of the minor's paternal great-grandmother. Father did not know their birthdates; he would need to get that information from the library.

Father also sent screen shots of his own genealogy research as well as a page of the Chickasaw Freedmen Roll with the name Charley Harris underlined. Father sent another picture showing Charley Harris as the father of Clarence Harris, who he thought might be father's great-grandfather. Several days later, the social worker spoke to father on the telephone about his Indian heritage and ICWA; father indicated ancestry with the

3

Muscogee, Choctaw, Blackfoot, Chickasaw, and Pomo tribes. He also said there were many more tribes, but he refused to provide further information.

On July 31, 2023, the social worker met with father to review his Indian ancestry. They went to a family ancestry center where father found birthdates for some of his ancestors. They also stopped at the home of father's maternal uncle who told them he did not have any contact information for family members who might have more information; he did remember that his grandmother Opal was Blackfoot. Opal Lee Murdock was a name included in the family tree provided by father. The social worker left her business card with father's uncle.

On September 15, 2023, the Agency filed an ICWA-030 form with the juvenile court. On the first page, the Agency noted the minor may have eligibility in the Pomo, Blackfoot, Cherokee, Choctaw, Chickasaw, and Creek tribes. The form included identifying information for several ancestors including all four paternal great-grandparents. Attached to the form was the dependency petition, the minor's birth certificate, the father's family tree, and a page from the Chickasaw Freedman Roll with the name Charley Harris, number 3895, underlined. The form was sent to 41 tribes: the three Cherokee tribes, the three Choctaw tribes, all the Muscogee tribes, all the Pomo tribes, the Chickasaw Nation, and the Blackfoot tribes.

On November 29, 2023, the Agency asked for a 60-day extension to complete its ICWA inquiry, as it had not yet heard from all 41 tribes. The juvenile court granted the extension.

On December 18, 2023, the Agency filed return receipts from the 41 tribes it had notified. The tribes that responded, including the Choctaw Nation, informed the Agency that the minor was not enrolled in, and not eligible for, membership in their tribe. The Agency was still waiting for a response from nine tribes, including the Blackfoot tribe.

In January 2024, the juvenile court again continued the section 366.26 hearing because the Agency was still waiting on responses from several tribes. The Agency then

reached out to the remaining tribes directly and, as necessary, re-sent the ICWA-030 form. Several of the remaining tribes advised the Agency that the minor was neither enrolled in, nor eligible for, membership in their tribe. The Agency still had not received a response from the Redwood Valley Band of Pomo Indians, the Big Valley Band of Pomo Indians, or the Habematolel Pomo of Upper Lake, despite repeated attempts. The Agency asked the juvenile court to find the minor was not an Indian child.

On March 20, 2024, the Habematolel Pomo of Upper Lake confirmed that the minor was not enrolled in, and not eligible for, membership in their tribe.

At the contested section 366.26 hearing, the juvenile court found ICWA did not apply. "I do find that the efforts to contact the different tribes that are potential links between father and mother and any of the [Indian] tribes has been reasonable and somewhat extensive and I do find that ICWA does not apply at this point." The juvenile court also found by clear and convincing evidence that the minor was adoptable and that adoption was likely. The juvenile court terminated parental rights.

DISCUSSION

A major purpose of ICWA is to protect Indian children who are members of or are eligible for membership in an Indian tribe. (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) ICWA defines an Indian child as one who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4).) The juvenile court and the Agency have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)

"[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a '*reason*

5

*to believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id*., subd. (e), italics added.) Third, if that further inquiry results in a *reason to know* the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052, italics added.) We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430, disapproved on another ground in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1153.)

Here, following the Agency's initial contact with the minor, both father and mother reported Indian ancestry. The Agency thus had reason to believe the minor may be an Indian child. (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1049.) The Agency then made numerous inquiries into the possibility that the minor was enrolled in, or eligible for enrollment in, 41 different Indian tribes. Apart from the two tribes who failed to respond, each tribe said the minor was not enrolled in, and not eligible for, membership in its tribe. Thus, contrary to father's claim on appeal, the Agency never had reason to know the minor may be an Indian child. (*Id*. at p. 1050.) As a result, the Agency was never required to give formal notice of the dependency petition to any Indian tribe. (*Ibid*.)

Father nevertheless argues the Agency failed to provide adequate notice to the numerous tribes, particularly the Chickasaw Nation, because the ICWA-030 form submitted by the Agency did not include the names of his great-grandfather Charley Harris and his great-great-grandfather Clarence Harris. But the Agency attached the family tree provided by father to the ICWA-030 notice. The family tree included the names Charley and Clarence Harris and their relationship to the minor. The Agency also attached to the ICWA-030 form a page from the Chickasaw Freedmen Roll with the name Charley Harris underlined. And, finally, in its ICWA-030 form, the Agency checked box number 8.a., indicating that the minor's tribal affiliation may be traced through the "1906

6

Final Roll." (Cf. *In re D.N.* (2013) 218 Cal.App.4th 1246, 1252 [notice was not inadequate when the Agency failed to check the box for the 1906 Final Roll].)

The Agency and the juvenile court made all necessary ICWA inquiries and provided sufficient ICWA notice.

DISPOSITION

The juvenile court's orders are affirmed.

        /s/
        MAURO, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
BOULWARE EURIE, J.