Filed 12/12/22  In re A.H. CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B316137 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ALEXIS S. et al.,<br><br>Defendants and Appellants. | Los Angeles County Super. Ct. Nos. 18CCJP02887A–B |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant Antonio H.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant Alexis S.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Alexis S. (Mother) and Antonio H. (Father) appeal from the juvenile court's orders terminating their parental rights over their two daughters. They do not argue the orders were wrong, however. Instead, they argue that the Los Angeles Department of Children and Family Services (Department) conducted an inadequate initial inquiry under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). The Department concedes the error but argues it was harmless. We agree with the Department and affirm.

## BACKGROUND[1]

On May 7, 2018, the Department filed a dependency petition alleging jurisdiction over Au. R. (age 13 months) and Ay. R. (age 2 months), under Welfare and Institutions Code section 300, subdivisions (a) and (b)(1).[2] The petition alleged that the parents engaged in domestic violence that placed the children at risk for serious physical harm (Count a-1), that the parents failed to protect the children from the violence (Count b-1), and that both parents abused marijuana (Counts b-2 & b-3).

At the detention hearing the following day, the court found Father to be the presumed father, held that the Department had made a prima facie showing that the children were people

---

[1] Due to the limited nature of this appeal, we recite only the facts and procedural background relevant to the ICWA inquiry.

[2] All undesignated statutory references are to the Welfare and Institutions Code.

2

described by section 300, and ordered the children detained from both parents. Mother filed an ICWA-020 form indicating she had no known Indian ancestry.[3] Upon reviewing the form and asking Mother whether Father had any Indian ancestry, the court found that ICWA did not apply. Although the maternal grandmother was in the courtroom, the court did not ask her whether she had reason to know that the children were Indian children. The maternal great-grandmother's name and phone number were listed in the detention report.

At the June 15, 2018 restraining order hearing, Father filed an ICWA-020 form indicating he had no known Indian ancestry.[4] The court asked Father's attorney for confirmation that Father had indicated "no ICWA." Based on counsel's representation, the court stated it "will continue to find no reason to know this case is governed by the Indian Child Welfare Act." Although the paternal grandmother was in the courtroom, the court did not ask her whether she had reason to know that the children were Indian children.

At the September 13, 2018 jurisdiction and disposition hearing, the court sustained Counts b-1 and b-2 and dismissed Count a-1. The court declared the children to be dependents of the court, removed them from both parents, and granted reunification services.

In addition to the maternal grandmother, maternal great-grandmother, and paternal grandmother, the Department also

---

[3] Mother had also denied having any Indian ancestry when the social worker inquired during the Department's investigation.

[4] Father had also denied having any Indian ancestry when the social worker inquired during the Department's investigation.

had contact with a maternal grandfather, a maternal aunt, a paternal uncle, and a maternal cousin. The Department did not ask any of these people whether the children were, or might be, Indian children.

Reunification efforts failed, and on October 19, 2021, the court terminated parental rights over both children. Mother and Father filed timely notices of appeal.

## DISCUSSION

Mother and Father each contend the Department violated ICWA's initial inquiry requirements by failing to question their extended family members about whether the children had Indian ancestry. The Department concedes the error but argues the failure to inquire was harmless. We agree with the Department.

### 1. ICWA

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . . [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.) Under ICWA, an " 'Indian child' " is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].) It is up to the tribe to decide whether a child is an Indian child under ICWA. (*Isaiah W.*, at p. 15.)

4

"[T]he burden of coming forward with information to determine whether an Indian child may be involved . . . in a dependency proceeding does not rest entirely—or even primarily—on the child and his or her family." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233.)  Rather, "[j]uvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*Ibid.*; see also *Isaiah W., supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).)

This affirmative duty to inquire comprises a two-step process.  First, if a child is removed from his or her parents and placed in the custody of a county welfare department, the department has a duty to "ask[ ] the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child *is, or may be*, an Indian child . . . ." (§ 224.2, subd. (b), italics added.)  The court must make a similar inquiry when the parents first appear in court: "[T]he court shall ask each participant present in the hearing whether the participant *knows or has reason to know* that the child is an Indian child." (§ 224.2, subd. (c), italics added.)  The court's duty of initial inquiry includes requiring each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status.  (Cal. Rules of Court, rule 5.481(a)(2)(C).)

Second, if the court or social worker has "*reason to believe* that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child," by, among other things, interviewing the parents and extended family members, and contacting any

5

tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e), italics added; see § 224.3, subd. (a)(5)(C).)

If, after the initial and further inquiries, there is *reason to know* that an Indian child is involved, notice must be provided to the parent, legal guardian, or Indian custodian and the child's tribe. (§ 224.2, subd. (f).) There is reason to know a child is an Indian child if any one of the six statutory criteria is met. (*Id.*, subd. (d).)

We review ICWA-related matters for substantial evidence. (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.) But, "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. [Citation.]" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051, fn. omitted.)

## 2.    The ICWA error was harmless.

As discussed, in this case the Department did not ask the parents' extended family members about their Indian ancestry despite having contact with a maternal grandmother, maternal grandfather, paternal grandmother, maternal great-grandmother, maternal aunt, paternal uncle, and maternal cousin. The Department concedes, and we agree, that this was error. (See *In re Darien R.* (2022) 75 Cal.App.5th 502, 509 [finding error where evidence showed Department had contact with maternal aunt and maternal grandfather but failed to inquire of them regarding Indian ancestry].)

Because the error is one of state law, we typically reverse only if the error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818, 836. (*In re J.W.* (2022) 81 Cal.App.5th 384, 389–390 (*J.W.*); see *In re S.S.* (2022) 75 Cal.App.5th 575, 581 (*S.S.*) [requirement imposed by state law, not federal law].) Under

6

*Watson*, the appellant must show prejudice by establishing that "it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836.)

Yet "[a]lthough an appellant ordinary has the burden of establishing prejudice [citation], a parent's ability to make this showing based upon the record in failure-to-inquire cases can be problematic" because it is the Department's responsibility—not the parents'—to make inquiries and document its efforts. (*S.S.*, *supra*, 75 Cal.App.5th at p. 581.) Recognizing this problem, the appellate courts have disagreed about the extent to which prejudice must be shown to justify reversal when the Department fails to comply fully with its initial duty of inquiry under California's revised ICWA statutes. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, 777–779, review granted Sept. 21, 2022, S275578 (*Dezi C.*) [discussing three competing approaches and adopting a fourth].) Specifically, courts disagree on whether a failure to inquire of extended family members necessitates a remand when the parents deny Indian heritage and there is no other information in the record indicating additional inquiry will prove fruitful. (*Ibid*.)[5]

One line of cases holds that any error in the initial inquiry must result in reversal because the duty to inquire is mandatory and unconditional. (See, e.g., *In re J.C.* (2022) 77 Cal.App.5th 70, 80–82; *In re A.R.* (2022) 77 Cal.App.5th 197, 206–207; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556.) A second set of cases holds that

---

[5]     The Supreme Court granted review in *Dezi C.*, *supra*, 79 Cal.App.5th 769 to resolve this issue. The court also denied the appellant's request to depublish the opinion.

7

failing to inquire is presumptively harmless unless a showing is made by the parent on appeal (such as by an offer of proof) why further inquiry would lead to a different ICWA finding. (See *In re A.C.* (2021) 65 Cal.App.5th 1060, 1070; accord, *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430–1431.) A third group charts a middle course, holding that if the initial inquiry is deficient, the error is harmless unless, upon an examination of the record, it appears that inquiry would yield "readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" and that "the probability of obtaining meaningful information is reasonable." (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *S.S.*, *supra*, 75 Cal.App.5th at pp. 582–583.)

This court has adopted a fourth approach taken by our colleagues in Division 2 in *Dezi C.* (*J.W.*, *supra*, 81 Cal.App.5th at p 391.) There, the court held that "[a]n agency's failure to discharge its statutory duty of initial inquiry is harmless unless the record contains information suggesting a reason to believe that the children at issue may be 'Indian child[ren],' in which case further inquiry may lead to a different ICWA finding by the juvenile court." (*Dezi C.*, *supra*, 79 Cal.App.5th at p. 774.) The court in *Dezi C.* calls this the "reason to believe" rule because it holds the agency's failure to properly inquire into a child's Indian heritage harmless unless there the record reveals "reason to believe" that the absence of "further inquiry was prejudicial to the juvenile court's ICWA finding." (*Id.* at p. 779.) The record is defined as the record from the court below and evidence proffered by a parent on appeal. (*Ibid.*)

Based on the record before us, we conclude that additional inquiry would be a mere formality.[6] In *Dezi C.*, "our colleagues in Division 2 held that where the parents were raised by their own biological relatives and where the record suggests no reason to believe that the parents' knowledge of their own heritage is incorrect or that the children may have Indian heritage, no prejudice arises from [the Department's] failure to conduct a complete inquiry." (*J.W.*, *supra*, 81 Cal.App.5th at p. 391.)

Similarly, in this case, both parents were raised by, and were in touch with, a plethora of their extended biological relatives. When asked—more than once—neither parent expressed any doubt or hesitation as to whether they possessed Indian heritage. No representation has been made to this court that any extended family member has ever made a statement even hinting at Indian heritage. There is no reason to believe the parents misunderstood their familial roots. Accordingly, we conclude the Department's failure to conduct an adequate initial inquiry was harmless.

---

[6] The Department's request for judicial notice, filed July 13, 2022, is denied because the documents at issue were not before the trial court and are unnecessary to the resolution of this appeal.

**DISPOSITION**

The orders are affirmed.

HARUTUNIAN, J.*

I concur:


STRATTON, P. J.

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WILEY, J., Dissenting.**

This is my 14th dissent on this issue. In this case the Department easily could have posed the key question of ancestry to

1. the maternal great-grandmother,
2. the maternal grandfather,
3. the paternal grandmother,
4. the maternal aunt,
5. the paternal uncle,
6. and the maternal cousin.

The Department does not say why it so persistently violates the law when compliance would involve nearly no effort—just a minute or two of time to obey a clear statutory directive. The Department simply argues its conduct is harmless.

Tribes are the victims here. Do they think these errors are harmless? We do not know because no one has given them notice and an opportunity to be heard. I perceive harm.

WILEY, J.